196 P.3d 905

In the Matter of the Person of
Jonathon L. Hudelson.

STATE of Idaho DEPARTMENT OF
HEALTH AND WELFARE,
Plaintiff–Appellant,

v.

Jonathon L. HUDELSON, Defendant–
Respondent.

No. 34495.

Supreme Court of Idaho,
Idaho Falls, September 2008 Term.

Oct. 16, 2008.

Honorable Lawrence G. Wasden, Attorney General, Boise, for appellant. Margaret P. White argued.

Hepworth, Lezamiz & Janis, Chtd., Twin Falls, for respondent. Robyn M. Brody argued.

J. JONES, Justice.

This case involves a dispute over the entitlement of the Department of Health and Welfare to reimbursement from a Medicaid recipient's personal injury settlement. The magistrate court held that the Department was entitled to reimbursement of about 1/27th of the medical expenses it paid. The Department appealed to the district court, which affirmed the magistrate's ruling. The Department appeals to this Court. We reverse and remand.

## I.

In 2000, Jonathon Hudelson, then twenty-two years old, was seriously injured in a car accident. He suffered a spinal cord injury, permanent paraplegia, brain damage, blindness in one eye and partial deafness. As a result of these injuries he became eligible for Medicaid and received at least $274,242.87 in benefits from the Department.[1]

Jonathon sued the alleged tortfeasor, and the case settled for $1,000,000, subject to court approval.[2] The Department approved the amount of the settlement and asked to be sent a proposed plan for allocating the settlement funds. Jonathon did not send a proposed allocation plan to the Department, but instead determined a settlement allocation without its input or approval. He then filed two petitions regarding the settlement.

First, he petitioned the district court to approve the settlement, establish a Qualified Settlement Fund (QSF), and approve his proposed allocation of the $1,000,000 settlement. The Department was not notified of, or involved in, this petition. The district judge presiding in the personal injury action, Judge John Melanson, approved the petition, including the proposed settlement allocation, the day it was filed. He also authorized payment of $498,126.65 for Jonathon's costs and attorney fees, and the purchase of a $300,000 annuity for Jonathon. After deducting these items, $201,873.35 remained and was held by the fund administrator to satisfy the Department's claim for reimbursement.

Jonathon's second petition, which was filed in magistrate court on the same day and which is the subject of this appeal, sought creation of a special needs trust. This petition asked the court to establish a special needs trust for Jonathon and to determine the amount necessary to satisfy the Department's claim.[3] The Department did not oppose the establishment of a special needs trust for Jonathon, but contested Jonathon's calculation of the amount necessary to satisfy its claim.

Jonathon argued that since the settlement was $1,000,000, his case was settled for approximately 1/27th ($1,000,000 divided by $26,968,391.34) of its "total value." Jonathon calculated the "total value" of his claim as follows:

| A. Economic Loss | |
|---|---|
| 1. Property Loss | $ 6,315.75 |
| 2. Past Medical Expenses | $ 311,995.59 |
| 3. Lost Wages and Earning Capacity | $ 580,963.00 |
| 4. Future Medical Expenses | $ 8,069,117.00 |
| B. Non-Economic Loss | $18,000,000.00 |
| TOTAL DAMAGES | $26,968,391.34 |

Therefore, he argued that the Department should likewise receive only 1/27th of the amount it paid in medical expenses.

In support of his petition, Jonathon submitted the settlement allocation that Judge Melanson had approved without the Department's knowledge or participation. He apportioned the damages by multiplying each damage category by $1,000,000 and dividing by $26,968,391.34, producing the following allocation:

| A. Economic Loss | |
|---|---|
| 1. Property Loss | $ 238.76 |
| 2. Past Medical Expenses | $ 11,568.94 |
| 3. Lost Wages and Earning Capacity | $ 21,542.37 |
| 4. Future Medical Expenses | $ 299,206.46 |
| B. Non-Economic Loss | $ 667,443.47 |
| TOTAL DAMAGES | $ 1,000,000.00 |

To calculate the Department's interest, Jonathon multiplied $274,242.87 (the first expense figure advanced by the Department) by $1,000,000 and divided by $26,968,391.34, producing $10,169.05. He then reduced that figure by 35% for attorney fees and by the Department's proportionate share of costs. This calculation resulted in a $5,103.57 inter-

---

1. The Department asserted various figures below—$274,242.87, $284,954.40, and $311,765.23—as having been expended for Jonathon's past medical care. The correct figure will need to be determined on remand.

2. Before the parties settled, the underlying tort action proceeded to a jury trial, resulting in a defense verdict. The district court judge granted Jonathon a new trial, and this Court affirmed that decision in *Hudelson v. Delta Int'l Mach.*

*Corp.*, 142 Idaho 244, 127 P.3d 147 (2005). The settlement occurred after remand.

3. Special needs trusts may be established for incompetent persons who are substantially disabled. I.C. § 68–1405(2)(a). Assets in the trust may be used to meet the beneficiary's needs that are not covered by Medicaid. When determining eligibility for Medicaid, assets in a special needs trust are not counted against the applicant. I.C. § 56–214(5).

est for the Department. The Department contested this figure, arguing that it was entitled to full reimbursement of all medical benefits paid on Jonathon's behalf, less its share of attorney fees and costs, a figure the Department calculated to be $133,376.03.[4]

The magistrate court acknowledged that the proposed allocation approved by Judge Melanson was not binding on the Department. Thus, it held an evidentiary hearing where Jonathon presented evidence to show the total value of his claim and the Department presented evidence primarily directed at the future medical expense factor of the proposed valuation. After considering the evidence, the magistrate found Jonathon had shown that $26,968,391.34 was a fair and reasonable valuation of his claim and that the Department had not offered sufficient evidence to dispute the proposed valuation.

The court further found that the allocation formula, which proportionately reduced the "total value," was reasonable and therefore adopted the same. However, the court calculated the total reimbursement due to the Department in a different manner than Jonathon.

The magistrate held that the Department was entitled to the entire amount allocated to past medical expenses ($11,568.94), and not simply the proportionate share paid by Medicaid ($10,169.05). The court also determined that the correct way to deduct attorney fees and costs was to add the two amounts together, and divide by the total settlement. ($498,126.65 divided by $1,000,000). The court then converted that number to a percentage (49.81%) and reduced the Department's interest by that percentage. The court applied the formula as follows:[5]

[$311,995.59 (total past medicals) × $1,000,000] / $26,968,391.34 =     $11,596.94
Less pro rata share of costs and fees (49.81% × $11,596.94) =     ( $ 5,776.44 )
Net reimbursement amount =     $ 5,820.50

The magistrate determined that Jonathon was entitled to reimbursement for expert witness costs. Those costs totaled $2,355.00, which resulted in a $3,465.50 judgment in favor of the Department.

The Department appealed the magistrate's decision to the district court, which affirmed the magistrate's decision and awarded costs to Jonathon. The Department appeals to this Court.

## II.

This appeal primarily hinges on whether the district court erred in holding that the reimbursement presumption in I.C. § 56–209b(6) did not apply. That provision establishes a presumption that the Department has first claim against a settlement or judgment for medical expenses advanced on behalf of a Medicaid recipient where the settlement or judgment does not indicate what portion is attributable to medical expenses. We hold that the district court erred in concluding that the presumption did not apply. We remand with guidance to the district

court as to how the allocation determination should be made.

## A.

### Standard of Review

■ When reviewing a decision of the district court acting in its appellate capacity, this Court directly reviews the district court's decision. *Losser v. Bradstreet,* 145 Idaho 670, 672, 183 P.3d 758, 760 (2008). Thus, we consider whether the district court committed error with respect to the issues presented.

■ The Department's appeal primarily involves statutory interpretation, which is an issue of law over which this Court exercises free review. *In re Daniel W.,* 145 Idaho 677, 679, 183 P.3d 765, 767 (2008). Statutory interpretation begins with the literal language of the statute. *Paolini v. Albertson's, Inc.,* 143 Idaho 547, 549, 149 P.3d 822, 824 (2006). The statute should be considered as a whole, and words should be given their plain, usual, and ordinary meanings. *Id.*

---

**4.** It is unclear how the Department arrived at this figure.

**5.** In making this calculation, the magistrate mistakenly used the figure $11,596.94 as the amount allocated to past medical expenses, instead of $11,568.94.

When the statutory language is unambiguous, the clearly expressed intent of the legislative body must be given effect, and the Court need not consider rules of statutory construction. *Payette River Prop. Owners Ass'n v. Bd. of Comm'rs of Valley County,* 132 Idaho 551, 557, 976 P.2d 477, 483 (1999). Therefore, the plain meaning of a statute will be given effect unless it leads to absurd results. *Driver v. SI Corp.,* 139 Idaho 423, 427, 80 P.3d 1024, 1028 (2003).

**B.**

**I.C. § 56–209b(6) Must Be Applied Where a Settlement or Judgment Does Not Delineate the Portion Attributable to Medical Expenses**

The federal Medicaid program was established in 1965 under Title XIX of the Social Security Act to provide medical care to qualified low income individuals and families. 42 U.S.C. § 1396 (2000); *Ark. Dep't of Health and Human Servs. v. Ahlborn,* 547 U.S. 268, 275, 126 S.Ct. 1752, 1758, 164 L.Ed.2d 459, 468–69 (2006). Each state administers its own Medicaid plan, which must conform to certain federal requirements. *See, e.g.,* 42 U.S.C. §§ 1396a, 1396k. One of these requirements is that states implement procedures to recover the program's costs from third parties who are legally liable for the Medicaid recipient's care and medical expenses. *Ahlborn,* 547 U.S. at 275–76, 126 S.Ct. at 1758–59, 164 L.Ed.2d at 468–69. Idaho has implemented these requirements in its state plan. *See* I.C. § 56–209b. In order to be eligible to receive Medicaid, an applicant must assign to the Department his or her right to recover payment from any third party up to the amount of medical assistance paid. I.C. § 56–209b sets out procedures designed to protect the state's interests in cost recovery.

Critical to this case is I.C. § 56–209b(6), which provides in pertinent part:

If a settlement or judgment is received by the [Medicaid] recipient without delineating what portion of the settlement or judgment is in payment of medical expenses, it

will be presumed that the settlement or judgment applies first to the medical expenses incurred by the recipient in an amount equal to the expenditure for medical assistance benefits paid by the department as a result of the occurrence giving rise to the payment or payments to the recipient.

This provision has no application where the judge or jury awards a specific amount of compensation for medical expenses or where an allocation is agreed upon by the interested parties, which necessarily includes the Department.

**1.**

**The District Court Erred in Failing to Apply I.C. § 56–209b(6)**

■ The Department argues that Judge Butler erred in failing to apply the presumption in section 56–209b(6). Judge Butler held that Jonathon "did not actually receive the settlement until after Judge Melanson had approved the [QSF]." Even though he stated that the allocation approved by Judge Melanson was not binding on the Department, he held that since the allocation was approved before Jonathon "received" his settlement, the presumption of section 56–209b(6) never came into effect.

Jonathon argues that he did not receive the settlement at the time the settlement was approved because the money was being held in the QSF; the attorney fees were paid directly from that fund; and none of the money was directly payable to him. However, in our view, Jonathon "received" the settlement when Judge Melanson approved the settlement and established the QSF. The statute does not require that a Medicaid recipient receive the money from a settlement or judgment.[6] Rather, it speaks of receiving a settlement or judgment. Jonathon received the settlement for purposes of I.C. § 56–209b(6) when Judge Melanson entered the order approving the settlement. At that time, the settlement money was applied to Jonathon's benefit. Concurrent with the order establishing the QSF, the court

---

**6.** Indeed, the provisions of Chapter 14, Title 68, Idaho Code, contemplate that an incompetent person will not receive actual possession of the funds to be used for his or her benefit.

ordered disbursement of $498,126.65 to satisfy Jonathon's obligation for attorney fees and costs and disbursement of another $300,000 for an annuity that would make payments to his yet-to-be-established special needs trust.

■ Although I.C. § 68–1405(4) appears to allow for the determination of the amount of the Department's lien upon establishment of a special needs trust, as was done here, the more appropriate time to make such determination was when the compromise agreement was presented to Judge Melanson for approval. I.C. § 68–1402(1) provides that as part of the order approving a compromise of, or judgment on, the disputed claim of an incompetent person, the court "shall" also order payment of medical expenses. At that time, the court should have determined the Department's entitlement to reimbursement. This cannot be done without affording the Department notice and an opportunity to be heard on the matter. Indeed, I.C. § 68–1403(5) requires that the Department be provided notice at least 15 days before a hearing on a petition for disposition of the balance of an incompetent person's settlement or judgment. That did not happen here.

Jonathon concedes that the allocation approved by Judge Melanson did not bind the Department, but insists that the allocation nonetheless permits him to bypass the I.C. § 56–209b(6) presumption. Idaho law provides no escape from the presumption, although the Medicaid recipient can certainly present evidence to rebut it. The district court clearly erred in failing to apply I.C. § 56–209b(6).

### 2.

### *Ahlborn* Did Not Overrule I.C. § 56–209b(6)

■ Jonathon asserts that the district court's ruling was nevertheless correct, arguing that section 56–209b(6) was implicitly overruled by *Ahlborn*. 547 U.S. at 279–80, 126 S.Ct. at 1760–61, 164 L.Ed.2d at 470–72. *Ahlborn* established that federal Medicaid law prohibits states from recovering more of a Medicaid recipient's settlement than the portion representing medical expenses. *Id.* at 280–81, 126 S.Ct. at 1760–61, 164 L.Ed.2d at 471–72. In that case, Heidi Ahlborn was permanently injured in a car accident, and thereby became eligible for and received medical assistance under the Arkansas Medicaid program, administered by the Arkansas Department of Health and Human Services (ADHS). *Id.* at 272–73, 126 S.Ct. at 1756–57, 164 L.Ed.2d at 467–68. ADHS paid $215,645.30 in Medicaid benefits on Ahlborn's behalf. *Id.* Ahlborn settled with the alleged tortfeasors for $550,000, but the parties did not allocate the settlement between categories of damages. *Id.* at 273–74, 126 S.Ct. at 1757–58, 164 L.Ed.2d at 467–68. ADHS asserted its $215,645.30 lien against the settlement proceeds. *Id.* at 274, 126 S.Ct. at 1757–58, 164 L.Ed.2d at 468. Ahlborn then filed an action seeking a declaration that the lien violated federal Medicaid laws because it exceeded the amount of the settlement representing medical expenses. *Id.*

The Court considered 42 U.S.C. § 1396p, the anti-lien provision of the federal Medicaid statute, and found that it limited a state's ability to recover medical expenses it paid on a Medicaid recipient's behalf. *Id.* at 284, 126 S.Ct. at 1763, 164 L.Ed.2d at 473–74. A state Medicaid plan must comply with section 1396p, which generally prohibits states from placing liens against a Medicaid recipient's property.[7] 42 U.S.C. § 1396a(a)(18). The Court determined that sections 1396a(a)(25) and 1396k(a), which require Medicaid recipients to assign to the state their rights to payment for medical care from any third party, are exceptions to the anti-lien provision. *Ahlborn*, 547 U.S. at 284–85, 126 S.Ct. at 1763–64, 164 L.Ed.2d at 473–75; 42 U.S.C. §§ 1396a(a)(25)(H) & 1396k(a). The Court determined that since these sections are exceptions to the anti-lien provision, the scope of the assignment is limited to the express authorization granted by the statute. *Ahlborn*, 547 U.S. at 284, 126 S.Ct. at 1763, 164 L.Ed.2d at 473–74. The Court reasoned that the statutes all focus on recovery of payments for medical care, and not rights to payment of lost wages or other types of

---

**7.** The anti-lien provision itself contains specific exceptions that do not apply to this case. *See* 42

U.S.C. § 1396p; *Ahlborn*, 547 U.S. at 283–84, 126 S.Ct. at 1762–63, 164 L.Ed.2d at 473–74.

damages claims. *Id.* at 280–81, 126 S.Ct. at 1760–61, 164 L.Ed.2d at 471–72; *see also* 42 U.S.C. §§ 1396k(a)(1)(A) & 1396a(a)(25)(A), (B) & (H). Therefore, the Court determined that the assignment authorized by the statutes was limited to the right to recover payments for medical care. *Ahlborn,* 547 U.S. at 285, 126 S.Ct. at 1763–64, 164 L.Ed.2d at 474–75.

After determining the limitations of state recovery of Medicaid payments, the Court examined the enforceability of the Arkansas reimbursement statutes. *Id.* at 278, 126 S.Ct. at 1759–60, 164 L.Ed.2d at 470. Arkansas law provided that in order to be eligible for Medicaid, an applicant "shall automatically assign his or her right to any settlement, judgment, or award which may be obtained against any third party to [ADHS] to the full extent of any amount which may be paid by Medicaid for the benefit of the applicant." ARK.CODE ANN. § 20–77–307(a) (2001). Accordingly, "[w]hen medical assistance benefits are provided" to the recipient, ADHS "shall have a right to recover from the person the cost of benefits so provided." *Id.* § 20–77–301(a). The Supreme Court of Arkansas had determined that the statutes required Medicaid recipients to fully reimburse ADHS, even if no settlement proceeds remained for the recipient. *Ark. Dep't of Human Servs. v. Estate of Ferrel,* 336 Ark. 297, 984 S.W.2d 807, 811 (1999). The United States Supreme Court determined that Arkansas's statutes and case law attempted to permit the State to recover more than the portion of a settlement representing medical expenses, and thus violated the anti-lien provision of federal law. *Ahlborn,* 547 U.S. at 278, 126 S.Ct. at 1759–60, 164 L.Ed.2d at 470. Therefore, the statutes and case law were unenforceable. *Id.*

The language of Idaho's statute differs from the Arkansas statute that the United States Supreme Court held violative of the federal anti-lien provision. *See id.* at 280, 126 S.Ct. at 1760–61, 164 L.Ed.2d at 471–72. The language of Idaho's statute reads: "If a settlement ... is received by the recipient without delineating what portion of the settlement ... is in payment of medical expenses, *it will be presumed that the settlement or judgment applies first to the medical expenses* incurred by the recipient ..." I.C. § 56–209b(6) (emphasis added). The statute does not require an automatic assignment of the settlement to the state, regardless of how much of the settlement represents medical expenses. Instead, the statute provides a framework for a court to determine what portion of an unallocated settlement represents medical expenses.

I.C. § 56–209b(6) creates a procedure for determining a settlement allocation by imposing a presumption that an unallocated settlement will be allocated first to past medical expenses. *Ahlborn* does not prohibit states from implementing procedures on how to allocate unallocated settlements. In fact, *Ahlborn* specifically references the possibility that states may have rules and procedures in place that address how to allocate tort settlements in the absence of a stipulation. 547 U.S. at 288 n. 18, 126 S.Ct. at 1765 n. 18, 164 L.Ed.2d at 476 n. 18 (stating "some States have adopted special rules and procedures for allocating tort settlements.... Although we express no view on the matter, we leave open the possibility that such rules and procedures might be employed to meet concerns about settlement manipulation."). Therefore, *Ahlborn* does not overrule I.C. § 56–209b(6).

### 3.

### Guidance for Remand

■ When this Court reverses or vacates a judgment on one issue, it may address other issues to provide guidance to the district court on remand. *Clark v. Klein,* 137 Idaho 154, 159, 45 P.3d 810, 815 (2002). We provide guidance on four issues that will likely arise on remand: (1) determining what portion of an unallocated settlement or judgment represents past Medicaid benefits, (2) whether the Department's lien extends to future Medicaid payments, (3) whether the noneconomic damage cap must be considered where there are noneconomic damages, and (4) determination of the Department's share of attorney fees and costs.

### C.

### Determining the Portion of an Unallocated Settlement or Judgment that Represents Medicaid Benefits

■ Where the Department has a claim against a Medicaid recipient's unallocated

settlement or judgment, the parties should first attempt to negotiate an agreement. If no agreement is reached, I.C. § 56–209b(6) presumes that the Department is entitled to recoup amounts it has paid in benefits on behalf of the recipient up to the amount of the settlement or judgment. However, this presumption is subject to being rebutted. The Medicaid recipient may present evidence directed toward rebutting the presumption. If the court determines that the presumption has been rebutted by the recipient, the "Ahlborn Formula" may be used by the court in determining an appropriate allocation.

The parties in *Ahlborn* stipulated to the fact that, should Ahlborn's construction of the federal statute be correct, ADHS was limited to one-sixth of the total settlement. However, that fact does not require Idaho to adopt what has become known as the Ahlborn Formula. The Ahlborn Formula divides the settlement amount by the alleged "total value" of the claim, and then multiplies that fraction by the amount of the total value representing past medical payments. The resulting number is the Department's proportionate share of the settlement. For example, if the total value of the claim is $300,000, and the recipient and the third party settle for $100,000, the fraction is one-third. If $150,000 of the "total value" was attributable to past medical payments, then the Department is entitled to one third of that amount, or $50,000. After the formula is applied, attorney fees and costs are deducted.

At least one other jurisdiction has adopted the use of the Ahlborn Formula in conjunction with a hearing. *Lugo v. Beth Israel Med. Ctr.*, 13 Misc.3d 681, 819 N.Y.S.2d 892 (N.Y.Sup.Ct.2006). In that case, the plaintiffs in a medical malpractice case settled their claim for $3.5 million without allocating damages. *Id.* at 893. The plaintiffs then sought a court allocation of the settlement using the Ahlborn Formula. *Id.* at 893–94. The New York court adopted the formula, stating that it was rational, and that "the [United States Supreme Court] appears to sanction the formula by equating the stipulation to a judicial determination allocating the award." *Id.* at 897. The court further noted that "the *Ahlborn* Court recognized that, where a stipulation is not forthcoming, it is appropriate for the trial court to hold an allocation hearing. . . . [S]uch a hearing avoids the risk of 'manipulation' feared by [the state Medicaid agency] in this case." *Id.* at 897. The New York court stated that "[a] court determination is necessary to confirm the [total value] of the case. . . . The parties are also entitled to be heard on the fair allocation of the settlement proceeds." *Id.* at 897–98. The court determined that the Medicaid agency was entitled to an opportunity to challenge the claims made by the recipient as to the "total value" of the claim and the underlying evidence. *Id.* at 898.

The observations of the New York court are reasonable, and therefore, a court *may* apply the Ahlborn Formula if the Medicaid recipient is able to rebut the I.C. § 56–209b(6) presumption.

## D.

### The Department's Lien Does Not Include Future Medical Expenses

■■■ The Department contends it will have to pay for Jonathon's medical care in the future and should be able to recover those expenses from his settlement. Jonathon argues that, when considering *Ahlborn* in light of the statutory language, the Department's recovery should be limited to the amount of the settlement representing past medical expenses.

The *Ahlborn* decision did not directly address the issue of future expenses. However, its decision is based on the interpretation of the federal Medicaid statute, which the Court held limits the scope of the assignment provisions to their express language. *Id.* at 284, 126 S.Ct. at 1763, 164 L.Ed.2d at 473–74. The statute instructs states to require Medicaid recipients "to assign the State any rights, of the individual . . . to payment for medical care from any third party." 42 U.S.C. § 1396k(a)(1)(A). Further, "to the extent that *payment has been made* under the State plan for medical assistance in any case where a third party has a legal liability to make payment for such assistance . . . the State is considered to have acquired the rights of

such individual to payment by any other party *for such health care items or services.*" 42 U.S.C. § 1396a(a)(25)(H) (emphasis added). The statute provides that the state acquires the recipient's rights to payment from a third party for "such health care items or services" in reference to the payment *made* by the State. It does not contemplate recovery of future medical expenses, but instead limits recovery "to the extent that payment has been made," as shown by the use of the past tense. This language plainly means that Medicaid recipients must assign to the state their rights to payment from third parties for past medical expenses. The express language extends no further than past medical expenses.

Idaho's relevant statute also supports the conclusion that the state has the right to recover only the portion of the settlement representing *past* medical expenses. I.C. § 56-209b(3) reads:

> In all cases where the [Department] through the medical assistance program has or will be required to pay medical expenses for a recipient and that recipient is entitled to recover any or all such medical expenses from any third party or entity, the [Department] will be subrogated to the rights of the recipient *to the extent of the amount of medical assistance benefits paid by the [Department].*

(emphasis added). The following subsection reads:

> [I]f the recipient recovers funds, either by settlement or judgment, from such a third party or entity, *the recipient shall reimburse the department* to the extent of the funds received in settlement minus attorney's fees and costs, *the amount of the medical assistance benefits paid by the department* on his behalf as a result of the occurrence giving rise to the need for medical assistance.

I.C. § 56-209b(4) (emphasis added). Similar to the federal provisions, these sections contain language discussing the amount of medical assistance benefits "paid." The use of the past tense demonstrates that neither the federal nor the Idaho statutes were intended to allow the state to recover money meant to compensate the recipient for future medical expenses.

**E.**

### The Noneconomic Damage Cap Must Be Considered on Remand

■ Although the Department did not raise the issue on appeal, we cannot ignore a glaring error in the magistrate's determination of noneconomic damages, which was adopted by the district court. This issue will inevitably arise on remand, making it appropriate to provide some guidance.

It may well be that Jonathon's noneconomic loss was correctly calculated at $18 million. However, because of Idaho's statutory cap on noneconomic damages, a plaintiff can recover nowhere near that amount, either in a judgment or a settlement, absent factors not present here.[8] The allocation proposed by Jonathon and adopted by the court is impermissibly skewed against the Department by the use of this unrealistic figure. On remand, the damage cap must be taken into account.

At the time of Jonathon's accident in 2000, I.C. § 6-1603 provided:

> In no action seeking damages for personal injury, including death, shall a judgment for noneconomic damages be entered for a claimant exceeding the maximum amount of four hundred thousand dollars ($400,000); provided, however, that beginning on July 1, 1988, and each July 1 thereafter, the cap on noneconomic damages established in this section shall increase or decrease in accordance with the percentage amount of increase or decrease by which the Idaho industrial commission adjusts the average annual wage as computed pursuant to section 72-409(2), Idaho Code.

Jonathon estimated that the statutory cap on noneconomic damages was $731,391.59 in 2000. The practical effect of the statutory cap is that no defendant would pay a plaintiff more in a settlement for noneconomic dam-

---

**8.** The noneconomic damage cap does not apply to causes of action arising out of willful or reckless misconduct, or out of acts that would consti-

tute a felony under federal law. I.C. § 6-1603(4). There is no evidence that either of these exemptions applies here.

ages than the statutory cap would permit the plaintiff to recover in a judgment. Parties are aware of the statutory cap and must necessarily consider it in deciding their litigation and settlement strategies. As a matter of law, the statutory cap is the maximum "value" of a claim for noneconomic damages. Jonathon's argument that his claim's "total value" included $18,000,000 for noneconomic damages defies common sense when considering the noneconomic damage cap. On remand, noneconomic damages cannot exceed the amount of the 2000 cap.

### F.

### Attorney Fees

There are two attorney fee issues to consider—first, how the Department's share of fees and costs should be determined on remand and, second, the issue of attorney fees on appeal.

### 1.

The formula applied by the magistrate for determining the Department's share of attorney fees was correct. That is, the aggregate of attorney fees and costs should be divided by the total settlement to arrive at the percentage figure, which in this case is 49.81%. That figure should be utilized to determine the Department's responsibility for attorney fees and costs.

### 2.

Jonathon requests reasonable attorney fees on appeal, pursuant to I.C. § 12–117(1). To award attorney fees under this section, we must rule in favor of Jonathon and find that the Department acted without a reasonable basis in fact or law. *Canal/Norcrest/Columbus Action Comm. v. City of Boise*, 136 Idaho 666, 671, 39 P.3d 606, 611 (2001). We have not ruled in favor of Jonathon, and therefore he is not entitled to fees.

### III.

The district court's order is reversed, and the case is remanded for further proceedings consistent with this opinion. As we have stated above, the determination of the Department's entitlement to reimbursement should have been made, pursuant to I.C. § 68–1402(1), at the time the compromise was presented to the district court for approval. Since that occurred in a different case, we are unable to remand to that court. However, since I.C. § 68–1405(4) appears to allow the issue to be determined by the court which considers establishment of the special needs trust, we remand to the district court with instructions to remand to the magistrate court to conduct the further proceedings. No costs, no fees on appeal.

Chief Justice EISMANN, and Justices BURDICK, HORTON and Pro Tem KIDWELL concur.