PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3537
No. 09-3538
_____

RITA L. TRISTANI,
by and through her Attorney in Fact, MARIA C. KARNES;
JOSHUA C. VALENTA, individually, and on behalf of
others similarly situated;
A. H., individually and as parents and natural guardian
of A.H., a minor

v.

ESTELLE RICHMAN,
in both her individual and official capacity;
FEATHER O. HOUSTON, in her individual capacity,


Estelle Richman, in both her individual and official capacity;
Feather O. Houston, in her individual capacity,
                                        Appellants in 09-3537

Rita L. Tristani, by and through her Attorney in Fact, Maria C.
Karnes; Joshua C. Valenta, individually, and on behalf of others
similarly situated,
                                        Appellants in 09-3538

———————

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 06-cv-00694)
District Judge: Honorable Joy Flowers Conti

———————

Argued April 15, 2010
Before: SLOVITER, and HARDIMAN, *Circuit Judges* and
POLLAK[*], *District Judge*.

(Filed: June 29, 2011)

Patrick J. Loughren [ARGUED]
Loughren, Loughren & Loughren
3204 Grant Building
Pittsburgh, PA 15219-0000

Robert F. Daley
D. Aaron Rihn
Robert Peirce & Associates
707 Grant Street
2500 Gulf Tower
Pittsburgh, PA 15219-0000

Veronica A. Richards
Richards & Richards
16020 Perry Highway

---

[*]The Honorable Louis H. Pollak, Senior District Judge
for the United States District Court for the Eastern District of
Pennsylvania, sitting by designation.

2

614 Penn Street
Warrendale, PA 15086
   *Attorneys for Appellees/Cross-Appellants*

Jason W. Manne [ARGUED]
Office of General Counsel
Department of Public Welfare
300 Liberty Avenue
303 State Office Building
Pittsburgh, PA 15222-0000
   *Attorneys for Appellants/Cross-Appellees*

_____

OPINION OF THE COURT

_____


HARDIMAN, *Circuit Judge*.

   In 1965, Congress amended the Social Security Act to create a program for states to assist the poor with their medical expenses. Through this program, known as Medicaid, the fifty states pay medical expenses on behalf of qualified beneficiaries. For more than thirty years, in circumstances where third parties are liable for such medical expenses, the Pennsylvania Department of Public Welfare (DPW) has recouped its expenditures by asserting liens against future settlements or judgments. In *Arkansas Department of Health and Human Services v. Ahlborn*, 547 U.S. 268, 280 n.9, 291-92 (2006), the Supreme Court assumed without deciding that such liens, when limited to the portion of a settlement or judgment constituting reimbursement for medical costs, are an implied exception to the federal law prohibiting states from imposing liens on the property of Medicaid beneficiaries. We now

3

must decide whether these liens in fact constitute such an exception.

I

This appeal involves a putative class action filed by three Pennsylvania Medicaid beneficiaries subject to DPW liens. The District Court certified a question for interlocutory review pursuant to 28 U.S.C. § 1292(b), asking us to determine whether state agencies responsible for administering the Medicaid program have the authority to assert such liens and, if so, whether Pennsylvania's statutory framework is consistent with the Supreme Court's decision in *Ahlborn*.

We begin by reviewing the facts of the state court cases filed by each of the three plaintiffs (collectively, the Beneficiaries).

A

1

Rita L. Tristani underwent a bunionectomy in 1999 that resulted in pain and discoloration in her leg. Her surgeon suspected that she was suffering from deep venous thrombosis, and immediately referred her to the hospital. Upon her arrival, Tristani was examined by a medical resident who misdiagnosed her condition as superficial thrombophlebitis. Roughly one week after the misdiagnosis, Tristani suffered a massive pulmonary embolism and stroke, which left her partially paralyzed, disfigured, and brain-damaged. Consequently, Tristani resides in a facility where she receives full-time medical care.

Tristani was eligible for assistance under Pennsylvania's Medicaid program, and the DPW—the state agency responsible for administering Medicaid—paid for her medical care. In September 2001, Tristani filed a medical malpractice action in which she sought, *inter alia*, the costs of medical expenses that had been paid

on her behalf by the DPW. Approximately two months after the complaint was filed, the DPW wrote Tristani's counsel that, as a recipient of medical assistance, Tristani had assigned her right to recover medical expenses to the DPW. In May 2002, Tristani preliminarily settled her malpractice claim for $5.2 million. Thereafter, seeking to recoup funds it had expended for Tristani's medical care, the DPW sent Tristani's counsel another letter asserting a lien of $247,514.98 against her settlement. The agency later reduced this lien by 40% to $148,508.99 to bear its proportionate share of Tristani's contingency fee obligation to her counsel. On June 2, 2005, the state trial court issued an order directing payment of the DPW's lien in full.

2

In January 2005, Joshua Valenta was injured in a traffic accident and suffered relatively minor, but permanent injuries. Valenta was eligible for government assistance, and the DPW paid $15,539.61 for his medical expenses.[1] Following his accident, Valenta sued the tortfeasor, whose insurance carrier settled the case for $130,000. In April 2005, the DPW sent Valenta's attorney a letter informing him that, as counsel for a Medicaid recipient in a

---

[1] Unlike Tristani, Valenta was enrolled in a managed care organization (MCO) that contracts with Pennsylvania to provide medical assistance. Pursuant to that contractual arrangement, the MCO receives a monthly capitation fee for each enrolled member, in exchange for which the MCO pays health service providers for the cost of the member's medical care. Although Valenta was enrolled in an MCO, the DPW paid the bulk of his medical fees directly. In addition to these direct payments, the DPW also paid the MCO $1,001.90 in capitation fees on Valenta's behalf, and the MCO ultimately disbursed $42.35 in connection with his injuries.

5

third-party liability tort action, Pennsylvania law required him to satisfy the DPW's claim prior to making a distribution to his client. In August 2005, the DPW sent another letter asserting a lien for $15,581.56 against Valenta's settlement, which it reduced to $10,000 to account for attorneys' fees. Valenta's attorney promptly mailed the DPW a check for $10,000 to satisfy the lien.

3

A.H. is a young girl who suffered brain injuries following surgery to correct a congenital heart defect. The DPW enrolled A.H. in an MCO and paid capitation fees totaling $25,095.91 on her behalf. The MCO's payments to A.H.'s health care providers totaled $171,617.18. The DPW also paid $1,458.10 on a fee-for-service basis for A.H.'s benefit. In June 2005, A.H. filed a medical malpractice claim against her doctors, which was settled in April 2007 for an undisclosed amount. After the settlement, the DPW asserted a lien for $106,306.88 to reflect the cost of her medical care, less attorneys' fees and pro-rata costs. A.H. challenged the validity of the DPW's lien, and, instead of paying the lien directly, A.H.'s mother obtained court approval to place the disputed funds in an escrow account pending the outcome of this litigation.[2]

---

[2] In addition to challenging the validity of the DPW's liens generally, A.H. asserts that the DPW's practice of recouping the cost of medical care exceeding the capitation fees it paid is impermissible. The District Court order did not address whether the DPW is limited to recouping the amount it paid in capitation fees, or if it could instead seek reimbursement for the full amount of medical payments expended by the MCO. Because this issue was not addressed below, we decline to address it in this interlocutory appeal.

B

In May 2006, Tristani and Valenta commenced a putative class action in the District Court against: Estelle B. Richman, Pennsylvania's Secretary of Public Welfare; Feather Houston, Richman's predecessor; and the DPW. Tristani and Valenta sought a refund of their payments to the DPW, as well as declaratory and injunctive relief invalidating Medicaid liens generally. They argued that the DPW's claims were prohibited by the anti-lien and anti-recovery provisions of the Social Security Act. *See* 42 U.S.C. § 1396p(a)-(b). Alternatively, they asserted that Pennsylvania's scheme for recouping medical expenses from Medicaid recipients was impermissible under the Supreme Court's holding in *Ahlborn*.[3]

---

[3]     In *Ahlborn*, the Supreme Court reviewed an Arkansas law that permitted the imposition of liens on recoveries made by Medicaid beneficiaries against third parties. Pursuant to the Arkansas statute, the state could impose a lien in an amount equal to the medical assistance payments made on behalf of Medicaid beneficiaries, without regard to what portion of the settlement related to medical costs. The Court assumed without deciding that liens limited to medical costs are an implied exception to the federal law prohibiting liens on the property of Medicaid beneficiaries. *Ahlborn*, 547 U.S. at 284-85 ("To the extent that the forced assignment is expressly authorized by the terms of §§ 1396a(a)(25) and 1396k(a), it is an exception to the anti-lien provision. . . . [T]he exception carved out by §§ 1396a(a)(25) and 1396k(a) is limited to payments for medical care.") (internal citation omitted). The Court held that, because the Arkansas statute permitted the State to lien portions of the recovery *not* relating to medical costs, it was preempted by

7

Several months after Tristani and Valenta commenced their action, Richman and Houston (collectively, the Secretaries) filed a motion to dismiss. Following two amendments to the complaint, the Secretaries again filed a motion to dismiss and, after oral argument, the District Court denied their motion without prejudice.

In April 2008, Richman and Houston filed a motion for summary judgment. The next day, Tristani and Valenta filed a motion for partial summary judgment in which they sought a declaration that: (1) Pennsylvania's practice of asserting Medicaid liens is invalid; (2) the DPW's ability to recover medical payments made by MCOs is limited to the capitation payments made by the State; and (3) Pennsylvania's current method of determining the portion of a settlement that constitutes medical costs violates the Supreme Court's holding in *Ahlborn*.

The District Court issued a comprehensive opinion denying Tristani and Valenta's motion for partial summary judgment and granting in part and denying in part the Secretaries' motion. The District Court determined that federal law prohibits the DPW from asserting liens against third-party recoveries obtained by Medicaid beneficiaries. Nevertheless, the District Court denied Tristani's and Valenta's claims for monetary damages, holding that the Secretaries were entitled to qualified immunity. The District Court also held that Pennsylvania's practice of apportioning settlements between medical costs and other portions of the recovery was permissible under *Ahlborn*. The Court denied the Secretaries' motion for summary judgment as to Tristani's and Valenta's claims for declaratory and injunctive relief, but noted an unresolved issue regarding their standing to seek equitable relief.

After the District Court issued its order, the parties filed a joint motion to add a party to cure the potential standing problem.

the federal ban on placing liens on the property of Medicaid beneficiaries.

The Court permitted the parties to add A.H. who, both parties agreed, had standing with respect to the remaining issues. The District Court thus amended its prior order to deny the Secretaries' motion for summary judgment with regard to the validity of 62 PA. STAT. ANN. § 1409(b)(7)—Pennsylvania's statutory mechanism for attaching liens to recoveries made by Medicaid beneficiaries—and granted the parties' motion to certify an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

II

Although the parties agree that we have jurisdiction over this interlocutory appeal, we "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (internal citation omitted). The District Court had jurisdiction over the Beneficiaries' federal claims pursuant to 28 U.S.C. § 1331, and exercised supplemental jurisdiction over their state law claims pursuant to 28 U.S.C. § 1367(a).

The District Court certified an interlocutory appeal to this Court pursuant to 28 U.S.C. § 1292(b), which provides:

> [w]hen a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be

9

> taken from such order, if application is made to it
> within ten days after the entry of the order . . . .

Consistent with the requirements of § 1292(b), the Secretaries timely petitioned this Court for leave to appeal. After we granted the Secretaries' petition for interlocutory appeal, the Beneficiaries filed a notice of cross-appeal in the District Court.

The first issue we must confront with respect to our jurisdiction is whether the Secretaries have standing to appeal the order of the District Court. "The general rule is that a party may not appeal a favorable decision." *Ryan v. C.I.R.*, 680 F.2d 324, 325 (3d Cir. 1982) (citing *Elec. Fittings Corp. v. Thomas & Betts Co.*, 307 U.S. 241, 242 (1939)). Here, although the District Court held that the Medicaid liens asserted by the DPW were impermissible, it ultimately concluded that Richman and Houston were entitled to qualified immunity. Thus, the Secretaries prevailed on this issue in the District Court. *Cf. Horne v. Coughlin*, 191 F.3d 244, 247-48 (2d Cir. 1999) (noting that when a District Court makes an adverse constitutional holding followed by a determination that qualified immunity exists, appellate review of the constitutional decision may be precluded for lack of standing).

After issuing its opinion, however, the District Court permitted the parties to add A.H. to the litigation to ensure that the Beneficiaries would have standing to pursue declaratory and injunctive relief. Following the addition of A.H., and prior to certifying this interlocutory appeal, the District Court amended its order to deny the Secretaries' motion for summary judgment with respect to the validity of the Pennsylvania law permitting Medicaid liens. This issue was included in the District Court's certification for interlocutory appeal, and constitutes an adverse judgment from which the Secretaries may properly seek appellate review.[4]

---

[4] We also note that the Supreme Court has held that "[i]n an appropriate case, appeal may be permitted from an

10

Having decided that we possess jurisdiction over the Secretaries' appeal, we must now determine whether we have jurisdiction over the Beneficiaries' cross-appeal. Although they filed a notice of cross-appeal in the District Court, the Beneficiaries failed to petition for leave to appeal in this Court. We must decide whether this omission deprives us of jurisdiction over the issues raised in their cross-appeal. Stated differently, when an appellant has timely sought and received leave to appeal, is a cross-appellant obligated to separately seek permission to appeal?[5]

---

adverse ruling collateral to the judgment on the merits at the behest of the party who has prevailed on the merits, so long as that party retains a stake in the appeal satisfying the requirements of Art[icle] III." *Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 334 (1980). To the extent the Secretaries otherwise lack standing, we hold that their continuing interest in the outcome of this litigation, combined with the importance of the District Court's collateral determination regarding the validity of the Pennsylvania law, makes this an appropriate case for appellate review.

[5] The Courts of Appeals for the Second and Tenth Circuits have held that § 1292(b) requires a separate cross-application for leave to file a cross-appeal. *See Tranello v. Frey*, 962 F.2d 244, 247-48 (2d Cir. 1992); *United Transp. Union Local 1745 v. City of Albuquerque*, 178 F.3d 1109, 1114 (10th Cir. 1999) (finding no jurisdiction under § 1292(b), but exercising pendent appellate jurisdiction); *cf. Roth v. King*, 449 F.3d 1272, 1282-83 (D.C. Cir. 2006) (recognizing the tension between the filing requirements of Rule 5 and the jurisdiction granted by § 1292(b), but avoiding the problem by declining to engage in discretionary review).

In *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996), the Supreme Court explained: "[a]s the text of § 1292(b) indicates, appellate jurisdiction applies to the *order* certified to the court of appeals . . . . [Therefore,] the appellate court may address any issue fairly included within the certified order." Accordingly, when we granted the Secretaries' petition for leave to appeal pursuant to § 1292(b), we obtained jurisdiction over the entire certified order of the District Court, including any portions that were decided in the appellant's favor. *See United Transp. Union Local 1745 v. City of Albuquerque*, 178 F.3d 1109, 1122 (10th Cir. 1999) (Briscoe, J., concurring and dissenting). Thus, to the extent that the issues raised in the Beneficiaries' cross-appeal were included in the certified order of the District Court, they are properly before us on appeal.[6]

---

We note that both the Second and Tenth Circuits based their analyses in part on Federal Rule of Appellate Procedure 5(b), which governs appeals by permission, and provides that a cross-petition for leave to file a cross-appeal may be filed within 10 days after the initial petition is served. At the time these cases were decided, it was understood that Rule 5 was jurisdictional. More recently, however, the Supreme Court has clarified that non-statutory rules of procedure cannot be regarded as jurisdictional because "[o]nly Congress may determine a lower federal court's subject-matter jurisdiction." *Kontrick v. Ryan*, 540 U.S. 443, 452-56 (2004).

[6] Our holding with respect to our jurisdiction under § 1292(b) should not be understood to imply that cross-appeals may be omitted with impunity. Federal Rule of Appellate Procedure 5(b)(2) requires a putative § 1292(b) cross-appellant to file a cross application "within 10 days after the [initial] petition is served." Because Rule 5(b)(2) is not jurisdictional, however, it must be raised by a party. *See Kontrick v. Ryan*, 540 U.S. 443, 452-56

III

We exercise plenary review over an order resolving cross-motions for summary judgment. *Cantor v. Perelman*, 414 F.3d 430, 435 n.2 (3d Cir. 2005). In determining whether summary judgment is appropriate, we apply the same standard as the District Court. *Bucks Cnty. Dep't of Mental Health/Mental Retardation v. Pennsylvania*, 379 F.3d 61, 65 (3d Cir. 2004). Summary judgment should be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

IV

A

Having established that jurisdiction lies, we proceed to the principal substantive issue, namely, the lawfulness of the DPW's practice of imposing liens on judgments or settlements that Medicaid beneficiaries obtain from third parties. We begin with an overview of the applicable statutory provisions.

The Social Security Act provides that, as a condition to receiving Medicaid assistance, states must require individuals "to assign [to] the State any rights . . . to support . . . and to payment for medical care [the individual has] from any third party." 42

_____

(holding that court-adopted claim processing rule "can . . . be forfeited if the party asserting the rule waits too long to raise the point"). In this appeal, the Secretaries have forfeited their Rule 5(b)(2) argument. Although they make a one-line reference to the impropriety of the Beneficiaries' cross appeal in a footnote to their opening brief, and again in a footnote to their reply brief, they also concede that we have "discretion" to consider issues presented by the Beneficiaries in their cross-appeal.

13

U.S.C. § 1396k(a)(1)(A). The Act also requires states to "ascertain the legal liability of third parties . . . to pay for care and services under the plan" and, "in any case where such a legal liability is found to exist after medical assistance has been made . . . [, to] seek reimbursement . . . to the extent of such legal liability." *Id.* § 1396a(a)(25)(A)-(B).

However, and of significance to this appeal, the Act also provides:

> No lien may be imposed against the property of any individual prior to his death on account of medical assistance paid or to be paid on his behalf under the State plan, except–
>
>> (A)  pursuant to the judgment of a court on account of benefits incorrectly paid on behalf of such individual, or
>>
>> (B)  in the case of the real property of an individual–[who is in a nursing home and required by law to spend his own income on those expenses, and who cannot reasonably be expected to return home.]

*Id.* at § 1396p(a)(1). This is known as the "anti-lien" provision.

Of equal importance, the Act provides that "[n]o adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the State plan may be made, except [in limited circumstances not at issue in this case]." *Id.* at § 1396p(b)(1). This is known as the "anti-recovery" provision.

B

14

Pennsylvania has enacted a detailed statutory framework in an attempt to comply with the requirements of the Social Security Act. Consistent with the federal mandate, 62 PA. STAT. ANN. § 1404(b) provides that "[t]he acceptance of medical assistance benefits shall operate as an assignment to [the DPW], by operation of law, of the assistance recipient's rights . . . to payment for medical care from any third party."

Although a Medicaid beneficiary must assign the portion of her recovery relating to medical costs to the State, Pennsylvania's statutory framework provides the beneficiary with a number of options for prosecuting the remainder of her claim against a third party. For example, after providing notice to the DPW, a Medicaid beneficiary may elect not to include medical costs as damages in her lawsuit against a third party. *See* 62 PA. STAT. ANN. § 1409(b)(5).[7] If the beneficiary chooses not to include medical costs as part of her damages, the State will not be involved in the prosecution of her claim.

When a Medicaid beneficiary chooses to pursue damages for medical costs, however, the method of transferring this portion of the recovery to the State will vary depending on whether the State is involved in the lawsuit. If the action is prosecuted by the Medicaid beneficiary alone, after the payment of litigation expenses and attorneys' fees, "the court or agency shall allocate the judgment or award between the medical portion and other damages and shall allow [the DPW] a first lien against the medical portion of the judgment or award, [in the] amount of [the DPW's] expenditures for the benefit of the beneficiary under the medical

---

[7] Although § 1409(b)(5) was not enacted until 2008, it is relevant because the Beneficiaries seek declaratory and injunctive relief.

assistance program." *Id*. § 1409.1(b)(1).[8]  By contrast, if the claim is prosecuted jointly by the beneficiary and the DPW, after payment of litigation expenses and attorneys' fees, "the court or agency shall allocate the judgment or award between the medical portion and other damages and shall make an award to [the DPW] out of the medical portion of the judgment or award [in] the amount of [the] benefits paid on behalf of the beneficiary under the medical assistance program." *Id.* § 1409.1(b)(2).

C

The Beneficiaries claim the DPW's practice of asserting liens on recoveries made by Medicaid recipients violates the anti-lien and anti-recovery provisions of the Social Security Act. Despite having assigned to Pennsylvania the portion of their recovery relating to medical costs, the Beneficiaries claim they retain a property interest in their choses in action, including their claims for medical expenses.  Thus, they claim that § 1409.1(b)(1)—which permits Pennsylvania to take a lien on the portion of a settlement that constitutes medical costs—effectively authorizes the imposition of a lien on a Medicaid beneficiary's property in violation of federal law.  The DPW counters that its liens fall within an exception to the federal prohibitions on

---

[8] Section 1409.1 was enacted in response to the Supreme Court's decision in *Ahlborn*, to permit settlements or judgments that include Medicaid and non-Medicaid components to be apportioned between the two items of recovery.  In all respects relevant to the imposition of liens at issue here, it is identical to § 1409(b)(7), which was in force before *Ahlborn* and which remains valid law except as modified by § 1409.1's apportionment provisions.  *See* 62 PA. STAT. ANN. § 1409(b)(7) ("[T]he court . . . shall . . . allow as a first lien against the amount of such judgment or award, the amount of the expenditures for the benefit of the beneficiary under the medical assistance program.").

imposing liens on the property of Medicaid beneficiaries and on recovering medical assistance payments made on their behalf. The DPW further asserts that the Supreme Court's decision in *Ahlborn*, in which the Court assumed without deciding that such an exception exists, demonstrates that its liens are valid.

The District Court held that the Pennsylvania statute authorizing Medicaid liens was preempted by federal law. The District Court recognized the tension between the plain language of the anti-lien and anti-recovery provisions of the Social Security Act, which prohibit states from recouping medical assistance payments made on behalf of Medicaid beneficiaries, and the forced assignment and reimbursement provisions of the Act, which require states to recover medical assistance payments made on behalf of beneficiaries. Relying on *dicta* in the *Ahlborn* decision, the District Court determined that Medicaid beneficiaries, despite having assigned their recovery of medical costs to the State, retain an enduring property interest in this portion of their recovery. *See Tristani v. Richman*, 609 F. Supp. 2d 423, 480 (W.D. Pa. 2009) ("Since Pennsylvania law permitted Tristani and Valenta to recover the entire amounts of their damages (including the amounts of payments made by the DPW to provide them with medical assistance), the entire settlement awards were their 'property.'" (citing *Ahlborn*, 547 U.S. at 285)). The District Court then attempted to harmonize the conflicting provisions of the Social Security Act by interpreting them to require Pennsylvania to take an active role in the recovery of medical costs, either by intervening in lawsuits initiated by Medicaid beneficiaries or by directly pursuing liable third parties.[9] Based on this approach, the

---

[9] Like the District Court, our dissenting colleague suggests that the language of the Social Security Act implies that "Congress wanted states to initiate suits against or intervene in actions against liable third parties, and wanted Medicaid recipients to cooperate in those efforts by providing state agencies with any information they might require."

17

District Court held that § 1409.1(b)(1) is preempted by the anti-lien provision. As we shall explain, we are unpersuaded by the District Court's analysis.[10]

---

Dissent Typescript at 7. Although it is true that § 1396a(a)(25)(A) speaks of "pursuing claims against . . . third parties," we note that § 1396a(a)(25)(A) addresses only the duty of the state or local agency "to *ascertain* the legal liability of third parties" whereas § 1396a(a)(25)(B), which discusses what must be done once a third party is deemed liable, provides only that "the State or local agency will seek reimbursement . . . to the extent of such legal liability." The absence of the phrase "against . . . third parties" from the portion of the statute that directs states to seek reimbursement is telling.

[10] To date, no federal appellate court has ruled on the validity of Medicaid liens limited to medical costs. Numerous district courts and state appellate courts, however, have assumed that such liens are valid in the wake of *Ahlborn*. *See, e.g.*, *Armstrong v. Cansler*, --- F. Supp. 2d ---, 2010 WL 2629740 (W.D.N.C. 2010) (endorsing the use of Medicaid liens limited to the portion of a settlement attributable to medical costs as consistent with *Ahlborn*); *State v. Peters*, 946 A.2d 1231 (Conn. 2008) (concluding that federal law does not prohibit the use of liens for recouping medical expenses); *see also In re Zyprexa Prods. Liab. Litig.*, 452 F. Supp. 2d 458 (E.D.N.Y. 2006) (permitting the use of Medicaid liens limited to the portion of a recovery attributable to medical costs); *Lima v. Vouis*, 94 Cal. Rptr. 3d 183 (Cal. Ct. App. 2009) (upholding the use of Medicaid liens to recover medical expenses after *Ahlborn*, but requiring the trial court to determine what portion of a settlement

constitutes payment for medical expenses); *Russell v. Agency for Health Care Admin.*, 23 So. 3d 1266 (Fla. Dist. Ct. App. 2010) (permitting the use of Medicaid liens to reimburse the State for medical costs); *Dep't of Health and Welfare v. Hudelson*, 196 P.3d 905 (Idaho 2008) (holding that liens on medical costs are an exception to the anti-lien provision); *Weaver v. Malinda*, 980 So. 2d 55 (La. Ct. App. 2008) (permitting the State to take a Medicaid lien limited to the portion of a settlement allocated to medical expenses); *Andrews v. Haygood*, 669 S.E. 2d 310 (N.C. 2008) (permitting the use of liens to recover Medicaid expenses limited to medical costs); *Edwards v. Ardent Health Servs.*, --- P.3d ---, 2010 WL 4276067 (Okla. Civ. App. 2010) (upholding the use of Medicaid liens limited to the portion of a recovery attributable to medical costs); *E.D.B. v. Clair*, 987 A.2d 681 (Pa. 2009) (acknowledging that *Ahlborn*'s holding invalidated the Arkansas law while permitting Pennsylvania's DPW to place liens on the medical expenses of Medicaid recipients).

Although these decisions have permitted the use of Medicaid liens limited to medical costs, the majority of them have not clearly articulated their rationale for doing so. Indeed, some courts appear to be under the misapprehension that the Supreme Court held such liens to be permissible in *Ahlborn*. *See, e.g.*, *In re Matey*, 213 P.3d 389, 394 (Idaho 2009) ("[A] state may not seek reimbursement from damages awarded for lost earnings, lost household services, non-economic injury and the like because, according to the Supreme Court, those damages are the property of the Medicaid recipient. However, the Supreme Court specifically stated that damages received for medical care did not

## D

"Our task is to give effect to the will of Congress, and where its will has been expressed in reasonably plain terms, 'that language must ordinarily be regarded as conclusive.'" *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 570 (1982) (quoting *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980)). As outlined above, the Social Security Act requires states to "seek reimbursement" for medical assistance payments made on behalf of Medicaid beneficiaries whenever "legal liability [of a third party] is found to exist." 42 U.S.C. § 1396a(a)(25)(B). Notably, this provision is silent regarding the method by which reimbursement must be sought. The Act also states that, as a condition to eligibility, Medicaid beneficiaries must assign to the state any right they may have to recover medical costs from a third party. The difficulty we perceive in this case is that the plain language of these provisions conflicts with the equally plain prohibition against states imposing "liens . . . against the property of" Medicaid beneficiaries, 42 U.S.C. § 1396p(a)(1)(A), or "recover[ing] . . . any medical assistance correctly paid on behalf of an individual," *id.* § 1396p(b)(1). The initial question, therefore, is whether the plain language of these provisions can be reconciled.

The District Court attempted to resolve the apparent conflict by interpreting the Act to require intervention by the states. However, the Court did not adequately explain, nor is it apparent to us, how its holding is consistent with the anti-recovery provision, which prohibits states from seeking "adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the State [medical assistance] plan." *Id.* By its terms, the anti-recovery provision limits the ability of states to recover medical assistance payments made on behalf of Medicaid

---

constitute property subject to the anti-lien provisions.") (citing *Ahlborn*, 547 U.S. at 284).

beneficiaries, regardless of the specific collection method utilized. Thus, the District Court's conclusion that Pennsylvania must intervene in tort actions filed by Medicaid beneficiaries cannot be reconciled with the anti-recovery provision.

E

The Supreme Court has stated that "[w]hen 'interpreting a statute, the court will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute . . . and the objects and policy of the law, as indicated by its various provisions, and give to it such a construction as will carry into execution the will of the legislature.'" *Kokoszka v. Belford*, 417 U.S. 642, 650 (1974) (quoting *Brown v. Duchesne*, 19 How. 183, 194 (1857)). When we consider the Social Security Act as a whole, including its text, structure, purpose, and legislative history, we conclude that the DPW's practice of asserting liens against that portion of a Medicaid beneficiary's recovery relating to medical costs must be viewed as an exception to the anti-lien and anti-recovery provisions.

The anti-lien and anti-recovery provisions significantly predate the reimbursement and forced assignment provisions. As we shall explain, Congress was pursuing different goals in enacting these two sets of provisions. While the anti-lien and anti-recovery provisions were intended to ensure that Medicaid beneficiaries were not forced to directly bear the costs of their medical care, the reimbursement and forced assignment provisions were intended to allow states to recoup their expenditures for medical assistance payments when third parties are held liable. By allowing states to recover these expenditures, Congress both protected the public fisc and ensured that beneficiaries did not receive a windfall by recovering medical expenses they did not pay. In order to effectuate the goals animating these conflicting provisions, we

21

must view the reimbursement and forced assignment provisions as exceptions to the anti-lien and anti-recovery provisions.[11]

1

An examination of the Social Security Act reveals that Congress has consistently pursued the dual goals of protecting the personal property of Medicaid beneficiaries while ensuring that liable third parties reimburse states for Medicaid expenditures. As we shall describe below, the Act's evolution over time reveals that Congress has not viewed these objectives to be in conflict. Rather, the available evidence indicates that Congress did not intend that liens for medical costs would fall within the scope of the anti-lien and anti-recovery provisions.

The anti-lien and anti-recovery provisions were first incorporated into the Social Security Act in 1960, some five years before Medicaid came into being. They required state medical assistance plans for the aged to:

---

[11]  This analysis is entirely consistent with the Supreme Court's holding in *Ahlborn*. The purpose of the anti-lien and anti-recovery provisions was to ensure that Medicaid beneficiaries would not bear the burden of their medical costs during their lifetimes. Consequently, to the extent that a settlement or judgment paid by a third party does *not* pertain to medical costs, the state has no recourse to those funds. As the reimbursement and forced assignment provisions make clear, however, the portion of a settlement or judgment that does relate to medical costs properly belongs to the state. To hold to the contrary would be to provide Medicaid beneficiaries with a windfall in direct contravention of the congressional mandate that states recoup the costs of medical assistance from liable third parties.

provide that no lien may be imposed against the property of any individual prior to his death on account of medical assistance for the aged paid or to be paid on his behalf under the plan (except pursuant to the judgment of a court on account of benefits incorrectly paid on behalf of such individual), and that there shall be no adjustment or recovery (except, after the death of such individual and his surviving spouse, if any, from such individual's estate) of any medical assistance for the aged correctly paid on behalf of such individual under the plan.

42 U.S.C. § 302(a)(11)(E) (Supp. II 1959-1961).[12]  By its terms, this provision creates a system in which elderly recipients of

---

[12]  In 1962, the language of § 302 was duplicated in 42 U.S.C. § 1382(a)(15)(D), a provision governing state plans for aid to the aged, blind, or disabled.  *See* Pub. L. 87-543, tit. I, § 141(a), 76 Stat. 172, 197 (1962).  Discussion during hearings before the Senate indicates that the purpose of the provision was to protect the homes of blind recipients of aid. *See An Act to Extend and Improve the Public Assistance and Child Welfare Services Programs of the Social Security Act, and for Other Purposes: Hearings Before the Comm. on Finance of the S.*, 87th Cong. 362 (1962) (statement of John F. Nagle, Chief, Washington Office, National Federation of the Blind) ("State laws which require an applicant for blind aid to accept a lien on his property before he will be granted assistance, serve to convince the applicant–as nothing else can–of the full extent of his pauperized state. . . . A lien is such a restriction upon property and its free use that, although a home may represent a lifetime of thrift and denial, it is not available for use to the blind owner who wishes to make a

new start in life."). In 1965, largely the same language was included in 42 U.S.C. § 1396a(a)(18), a provision governing federal grants to states for medical assistance programs. *See* Pub. L. 89-97, tit. I, § 121(a), 79 Stat. 286, 344 (1965); *cf.* S. REP. No. 89-404, at 80 (1965) *reprinted in* 1965 U.S.C.C.A.N. 1943, 2020 (stating that pursuant to § 1396a "adjustment or recovery would be made only at a time when there is no surviving child who is under the age of 21 or who is blind or permanently disabled").

These three anti-lien and anti-recovery provisions remained in place until 1982, when Congress consolidated them into 42 U.S.C. § 1396p. *See* Pub. L. 97-248, tit. I. § 132(b), 96 Stat. 324, 370 (1982). Section 1396p actually broadened the authority of states to seek reimbursement from Medicaid beneficiaries by allowing them, in certain circumstances, to impose liens on the homes of beneficiaries during their lifetimes. *See* S. REP. No. 97-530, at 437 (1982) ("States are allowed to impose liens on real property including the home, of institutionalized [M]edicaid beneficiaries who the State determines, after notice and opportunity for a hearing, are reasonably likely to remain in a nursing home for the remainder of their lives."). Section 1396p remains in force today, and has undergone numerous amendments adjusting the exact circumstances under which states may recover from Medicaid beneficiaries. For purposes of our analysis, however, the various iterations of the anti-lien and anti-recovery provisions are irrelevant. Our focus is on the fact that the provisions have been in force since 1960, have been repeatedly re-enacted, and have consistently been animated by a legislative intent to insulate

24

medical assistance are insulated from paying the costs of their care during their lifetimes and the lifetimes of their surviving spouses. Nevertheless, this system, which ultimately allows a state to recoup its medical assistance expenditures directly from the estate of a deceased beneficiary, in no way entitles beneficiaries to retain monies paid to them by liable third parties in compensation for their medical costs.

The legislative history of the anti-lien and anti-recovery provisions confirms this understanding.[13] As a Senate Report discussing the provision stated, pursuant to the congressional framework "[a] State would not be permitted as a condition of medical assistance to impose a lien on the property of a recipient during [her] lifetime. . . . However, the bill would permit the recovery from an individual's estate after the death of [her] spouse if one survives [her]." S. REP. No. 86-1856, at 6 (1960), *reprinted in* 1960 U.S.C.C.A.N. 3608, 3615. The report then explains that "[t]his provision was inserted in order to protect the individual and [her] spouse from the loss of their property, usually the home, during their lifetime." *Id.* Congress's concern for protecting a

Medicaid beneficiaries from the costs of their medical expenses, and, in particular, to protect the family home.

[13] The Supreme Court has instructed that "where . . . resolution of a question of federal law turns on a statute and the intention of Congress, we look first to the statutory language and then to the legislative history if the statutory language is unclear." *Blum v. Stenson*, 465 U.S. 886, 896 (1984). As we explained *supra*, the plain language of the forced assignment and reimbursement provisions of the Social Security Act irreconcilably conflicts with that of the anti-lien and anti-recovery provisions. Accordingly, recourse to legislative history is necessary here.

25

Medicaid beneficiary's personal assets—not her interest in recovering medical costs paid on her behalf—clearly animated the enactment of the anti-lien and anti-recovery provisions. Moreover, a beneficiary's property interest in her home is readily distinguishable from the inchoate interest that she retains in her chose in action, particularly since Congress has mandated assignment of that chose to the state.[14] We cannot agree that Congress intended these provisions to prohibit states from placing liens on recoveries from liable third parties, especially in light of the reimbursement and forced assignment provisions it later added to the Social Security Act.

The reimbursement provision of the Act was first enacted in 1967, and required state medical assistance plans to provide:

> (A) that the State or local agency administering such plan will take all reasonable measures to ascertain the legal liability of third parties to pay for care and services (available under the plan) arising out of injury, disease, or disability, (B) that where the State or local agency knows that a third party has such a legal liability such agency will treat such legal liability as a resource of the individual on whose behalf the care and services are made available for [purposes of determining a potential recipient's eligibility for medical assistance] . . . [and] that in any case where such a legal liability is

---

[14] We need not decide whether Medicaid beneficiaries have more than a nominal property interest in the portion of recoveries from third parties attributable to medical costs. Whatever the extent of that property interest, it is sharply curtailed by the forced assignment provision, which requires potential Medicaid beneficiaries to assign this interest to the state as a condition of eligibility.

found to exist after medical assistance has been made available on behalf of the individual, the State or local agency will seek reimbursement for such assistance to the extent of such legal liability.

42 U.S.C. § 1396a(a)(25) (Supp. III v.2 1965-1968). The plain language of this provision requires states to consider third-party liability when making Medicaid eligibility determinations, and to seek reimbursement of sums expended when third-party liability is unknown at the time payments are made. In this way, the reimbursement provision protects the public fisc while preventing Medicaid beneficiaries from receiving a windfall. Although the anti-lien and anti-recovery provisions were in force when the reimbursement provision was enacted, Congress made no attempt to reconcile this new requirement with the prohibition against states recovering medical assistance payments made on behalf of Medicaid beneficiaries. Instead, the statute simply requires states to consider any known third-party liability as an asset of the individual in determining eligibility, and to seek reimbursement when liability is discovered after medical assistance payments have been made.[15]

The legislative history of the reimbursement provision confirms that Congress intended to ensure that states recover

---

[15] The reimbursement provision permits states to deny Medicaid benefits outright when third-party liability is known at the time Medicaid eligibility is determined and to recover their outlays when third-party liability is later discovered. Thus, although the anti-lien and anti-recovery provisions protect the assets of the Medicaid beneficiary, the reimbursement provision demonstrates that Congress did not believe that individuals should be entitled to have their medical expenses paid twice.

medical assistance payments made on behalf of Medicaid beneficiaries whenever third parties are found liable for medical expenses. As stated during a Senate hearing:

> Unquestionably, many beneficiaries will be paid twice through receipt of benefits under the [M]edicaid program, and from obligations imposed upon the insurance industry by the liability system. To the extent that the [Medicaid] program is intended to assist the medically indigent, it is not consistent to apply [M]edicaid benefits to those whose needs are being met by a third party under a legal or contractual obligation. To the extent that health care protection is being provided from sources other than under the social security program, the resulting duplication is discriminatory and a wasteful, inefficient use[] of public funds.

*Social Security Amendments of 1967: Hearing Before the S. Comm. On Finance*, 90th Cong. 1572 (1967) (statement of Wallace M. Smith).

The forced assignment provision of the Social Security Act was first enacted in 1977. As a condition of receiving Medicaid benefits, the forced assignment provision obligates states to require individuals

> to assign the State any rights, of the individual or of any other person who is eligible for medical assistance under this title and on whose behalf the individual has the legal authority to execute an assignment of such rights, to support (specified as support for the purpose of medical care by a court or administrative order) and to payment for medical care from any third party.

42 U.S.C. § 1396k(a)(1)(A). By its terms, this provision requires individuals, as a condition of receiving Medicaid benefits, to confer upon the state their right to recover the costs of their medical care. This is further evidence of congressional intent to ensure that Medicaid beneficiaries do not receive a windfall by recovering medical costs they did not pay.

Our review of the evolution of the various provisions of the Social Security Act reveals that the only way to harmonize the conflicting language of the anti-lien and anti-recovery provisions with the later-enacted reimbursement and forced assignment provisions is to conclude that the anti-lien and anti-recovery provisions do not apply to medical costs recoverable from liable third parties. The anti-lien and anti-recovery provisions evince congressional intent to protect the assets of Medicaid recipients, and to ensure that beneficiaries are not forced to personally bear the costs of their medical care. Meanwhile, the reimbursement and forced assignment provisions require states to recover the costs of medical assistance payments despite the apparent prohibition against seeking recovery of medical assistance payments. It defies common sense to conclude that Congress intended to protect the rights of Medicaid beneficiaries to recover medical costs that they never paid in the first place. Indeed, federal law requires beneficiaries to assign their right to recover such medical costs to the state, because it is the state—not the beneficiaries—that pays these costs.

2

Our conclusion that liens on medical costs are excepted from the anti-lien and anti-recovery provisions is bolstered by the forced assignment provision. The District Court viewed the forced assignment provision as evidence of congressional intent to require states to intervene in lawsuits initiated by Medicaid beneficiaries against third parties. We see it differently.

29

As the Secretaries correctly point out, a partial assignment typically creates a lien on a portion of the recovery in favor of the assignee. *See, e.g.*, *Matchett v. Wold*, 818 F.2d 574, 576 (7th Cir. 1987) ("An ordinary lien attaches to property in being; the statutory attorney's lien attaches to an expectation [of recovery], the court thought the statute better described therefore as making the attorney in effect a partial assignee of his client's interest in the lawsuit . . . ."); *Angeles Real Estate Co. v. Kerxton*, 737 F.2d 416, 419 (4th Cir. 1984) ("[U]nder general common law principles, a partial assignment creates an equitable lien in favor of the assignee."); *Law Research Serv., Inc. v. Martin Lutz Appellate Printers, Inc.*, 498 F.2d 836, 837 (2d Cir. 1974) ("[T]he assignment of [part of] an existing right [under a judgment] creates an immediate lien in favor of the assignee that is valid against later lien creditors of the assignor."). We do not believe that Congress would prohibit states from imposing liens to recoup medical costs while at the same time imposing a requirement that has the legal effect of creating such liens. The more logical conclusion is that Congress understood that the legal effect of the forced assignment provision would be to provide the states with a lien on recoveries of medical costs. Thus, in our view, the forced assignment provision is evidence of Congress's intent to except recoveries of medical assistance payments whenever third parties are found liable for them.

Unlike the District Court, we do not believe that Congress intended to require states to intervene in Medicaid beneficiaries' lawsuits in order to recoup medical costs from third parties. Congress enacted the forced assignment provision more than a decade after it began requiring states to "seek reimbursement" for medical costs from liable third parties. The purpose of the provision was to ensure that states were able to recoup their outlays. Thus, far from restricting the state's ability to recoup medical expenses, the forced assignment provision was intended to facilitate the state's recovery of those funds.

30

Finally, practical considerations weigh in favor of our holding today. At present, over thirty states use liens to recoup medical expenses paid on behalf of Medicaid beneficiaries from liable third parties. *See State v. Peters*, 946 A.2d 1231, 1239 n.19 (Conn. 2008). And disparate federal and state courts have overwhelmingly endorsed this practice. *See supra* note 9. In Pennsylvania, the authority for imposing such liens dates back to 1980. *See* 1980 Pa. Laws 510 ("After payment of . . . expenses and attorneys' fees the court or agency shall, on the application of the department, allow as a first lien against the amount of such judgment or award, the amount of the department's expenditures for the benefit of the beneficiary under the medical assistance program . . . ."). Since then, Congress has had occasion to amend the anti-lien and anti-recovery provisions, and has chosen not to prohibit this widespread and pervasive practice. Its failure to do so further supports our holding that Medicaid medical expense liens are excepted from the anti-lien and anti-recovery provisions. *See Lorillard v. Pons*, 434 U.S. 575, 580 (1978) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it reenacts a statute without change.").

3

The text of the Social Security Act, when combined with its structure, purpose, and legislative history, reveals that Congress sought to accomplish different goals in enacting the anti-lien and anti-recovery provisions on the one hand, and the reimbursement and forced assignment provisions on the other hand. While the anti-lien and anti-recovery provisions were intended to protect the assets of Medicaid recipients, the subsequently-enacted forced assignment and reimbursement provisions were intended to limit the financial burden of Medicaid on the states and ensure that Medicaid beneficiaries did not receive a windfall by recovering

medical costs they did not pay.[16]  In this context, the forced assignment and reimbursement provisions are best viewed as creating an implied exception to the anti-lien and anti-recovery provisions of the Act.  Our conclusion is bolstered by the fact that the statutory mechanism created by Congress for beneficiaries to relinquish their right to recover medical assistance payments to the state—a partial assignment—itself creates a lien.  Consequently, we hold that liens on settlements or judgments limited to medical costs are not prohibited by the anti-lien and anti-recovery provisions of the Social Security Act.

IV

A

Having determined that liens limited to recoveries for medical costs are not prohibited by the anti-lien and anti-recovery provisions, we now turn to Pennsylvania's method of apportioning settlements between medical costs and the remainder of a beneficiary's recovery.  Typically, a Medicaid beneficiary's recovery from a third party will compensate her for a variety of damages, including medical costs, lost wages and pain and suffering.  Pursuant to the Supreme Court's holding in *Ahlborn*, states may be reimbursed only for the portion of the recovery constituting compensation for medical expenses.  Many settlements, however—including those at issue in this appeal—are not specifically apportioned between medical costs and other types of damages.  The question before us is how, in the absence of

---

[16]   Although the Dissent shares our concern in this respect, it argues that any windfall to Medicaid beneficiaries can be avoided by precluding beneficiaries from claiming amounts paid by Medicaid in their suits against third parties. We are unpersuaded by this approach because it would result in a windfall to tortfeasors.

explicit allocation, one may ascertain what portion of a settlement is allocable to medical expenses recoverable by the state.

Pennsylvania has addressed this allocation problem by providing:

> Except as otherwise provided in this act, notwithstanding any other provision of law, the entire amount of any settlement of the injured beneficiary's action or claim, with or without suit, is subject to the department's claim for reimbursement of the benefits provided any lien filed pursuant thereto, but in no event shall the department's claim exceed one-half of the beneficiary's recovery after deducting for attorney's fees, litigation costs, and medical expenses relating to the injury paid for by the beneficiary.

62 PA. STAT. ANN. § 1409(b)(11). As the District Court noted, the DPW has construed this provision as "'establish[ing] a statutory default rule of allocation for tort recoveries consistent with *Ahlborn.*'" *Tristani v. Richman*, 609 F. Supp. 2d 423, 464 (W.D. Pa. 2009) (quoting 37 Pa. Bull. 4881, 4228 (Sept. 8, 2007)). Pursuant to the DPW's construction of section 1409(b)(11), in the absence of a judicial allocation of damages, the DPW is entitled to recover the lesser of its actual expenditures on medical costs or one half of the beneficiary's recovery after expenses.

In this appeal, the Beneficiaries' medical costs constitute less than one-half of their recoveries; therefore, the DPW has recovered (or, in A.H.'s case, seeks to recover) the full amount of its Medicaid expenditures, less a *pro rata* reduction for attorneys' fees and costs. The Beneficiaries argue, however, that they settled their claims for less than full value, and that the DPW's recovery for medical costs should be reduced correspondingly. Because no such reduction occurred, the Beneficiaries claim that the DPW's

liens exceed the scope of the interests they assigned to the agency in violation of *Ahlborn*.

B

The District Court rejected the Beneficiaries' argument, concluding that Pennsylvania law validly adopted a default apportionment mechanism to divide settlements between medical costs and other expenses. The District Court noted that although section 1409(b)(11) predates *Ahlborn*, thereafter the DPW has interpreted it as establishing a default apportionment between non-medical and medical expenses. This interpretation has since been codified in 55 PA. CODE § 259.2, which states:

> (b)  In determining the portion of a tort recovery that represents payment for medical care by a third party, the Department will apply the following interpretations:
>
> . . . .
>
> (2)  In the absence of a court order allocating tort proceeds among categories of damages, ½ of the net proceeds are allocated by law to be available to repay injury-related [Medicaid] expenses. The amount of net proceeds is computed by deducting from the gross proceeds the attorney's fees, litigation costs and medical expenses relating to the injury that were paid for by the beneficiary prior to the settlement of the injured beneficiary's action or claim.
>
> . . . .
>
> (5)  The Department is not bound by a private agreement between the parties to a

> tort claim regarding allocation of the
> proceeds.
>
> (d)  If a court does not adjudicate the amount of the Department's claim against a settlement, the Bureau of Hearings and Appeals has jurisdiction to hear and determine an appeal by a beneficiary contesting the amount of the Department's claim.

This regulation explains section 1409(b)(11)'s relationship to the rule of *Ahlborn*, and formally establishes a default method for establishing the portion of a recovery relating to medical costs.[17]

The District Court found this scheme to be consistent with federal law.  The Court noted that *Ahlborn* recognized the possibility that plaintiffs would manipulate settlement agreements to artificially depress the portion attributable to medical expenses. In *Ahlborn*, the Supreme Court suggested that this risk could "be avoided either by obtaining the State's advance agreement to an allocation or, if necessary, by submitting the matter to a court for decision."  *Ahlborn*, 547 U.S. at 288.  In a footnote, the Court stated:

> [s]ome States have adopted special rules and
> procedures  for  allocating  tort  settlements  in

---

[17]  We note that, with the exception of subsection (d), which permits a beneficiary to appeal the default allocation of his recovery, this regulation is identical to the law in force prior to the *Ahlborn* decision.  Because the Beneficiaries' claims predate the regulation, there is some uncertainty as to whether they may avail themselves of the regulatory appeal process.  The parties agree, however, that to date the DPW has not engaged in any individualized apportionment of the Beneficiaries' settlements.

circumstances where, for example, private insurers'
rights to recovery are at issue. Although we express
no view on the matter, we leave open the possibility
that such rules and procedures might be employed
to meet concerns about settlement manipulation.

*Id.* at n.18. The District Court held that Pennsylvania's 50%
allocation and agency appeal provisions are "special rules and
procedures" of this kind that are consistent with the federal
requirement that the State's recovery not exceed the portion of the
third-party recovery attributable to Medicaid-paid expenses. The
Supreme Courts of North Carolina and Idaho have reached similar
conclusions with respect to analogous state laws. *See State Dep't
of Health & Welfare v. Hudelson*, 196 P.3d 905, 911 (Idaho 2008);
*Andrews ex rel. Andrews v. Haygood*, 669 S.E. 2d 310, 314 (N.C.
2008).

Alternatively, the District Court held that Pennsylvania's
apportionment scheme is valid because, under Pennsylvania law, a
settlement represents full compensation for an individual's
damages, which implies that the Beneficiaries cannot, after
settling, claim that they were not made whole. Under
Pennsylvania law, "when a subrogor settles a claim, he essentially
waives his right to a judicial determination of his losses, and
therefore conclusively establishes the settlement amount as full
compensation for his damages." *Goldman v. Workers' Comp.
Appeal Bd. (Girard Provision Co.)*, 620 A.2d 550, 552 (Pa.
Commw. Ct. 1993). "Hence, in effect, [Pennsylvania] law
indicates that when an individual settles his suit he is later
estopped from claiming that his damages exceed the amount
settled for." *Allstate Ins. Co. v. Clarke*, 527 A.2d 1021, 1025 n.4
(Pa. Super. Ct. 1987). The Pennsylvania Supreme Court has never
explicitly adopted this rule, but as the cases quoted above
demonstrate, it has gained some traction in the lower courts.
Accordingly, the District Court held that, even in the absence of
the statutory default allocation, the "made whole" doctrine would

36

fix the portion of the Beneficiaries' settlement attributable to Medicaid expenses at an amount equal to the DPW's actual expenditures.

We agree with the District Court's conclusion that Pennsylvania's apportionment scheme is valid. Pursuant to the current statutory framework, beneficiaries unhappy with its results may appeal the default allocation. This mechanism is consistent with the Supreme Court's holding in *Ahlborn*, and comports with the practice of other states. Therefore, we will affirm this portion of the District Court's order.[18]

C

Despite the validity of Pennsylvania's current apportionment scheme, the question remains whether the prior scheme, which did not provide a right of appeal from the default allocation, is valid under *Ahlborn*.[19] The District Court upheld the scheme, but we find it problematic.

---

[18] Because we uphold Pennsylvania's framework, we do not reach the merits of the District Court's alternative holding premised on the "made whole" doctrine.

[19] Tristani's and Valenta's claims regarding the validity of the apportionment scheme are moot because the District Court correctly determined that any recovery on their part is barred by the Eleventh Amendment and the doctrine of qualified immunity. A.H., however, challenged the validity of the DPW's lien prior to making a payment. Moreover, the DPW asserted its lien before section 1409 was amended. A.H. therefore has a viable claim for declaratory and injunctive relief.

Although the *Ahlborn* Court acknowledged the existence in state law of "special rules and procedures" for allocating settlements, and left open the possibility that such rules may be employed to address concerns about settlement manipulation, 547 U.S. at 288 n.18, it did not give states unfettered discretion to allocate settlements without regard to the actual portion attributable to medical expenses. Indeed, *Ahlborn* expressed a preference for resolving allocation disputes "either by obtaining the State's advance agreement to an allocation or, if necessary, by submitting the matter to a court for decision." *Id.* at 288.

We express no view as to whether allocation disputes of this type must be adjudicated by a court, or may instead be resolved through other "special rules and procedures." *Id.* at 288 n.18. We hold merely that in determining what portion of a Medicaid beneficiary's third-party recovery it may claim in reimbursement for Medicaid expenses, the state must have in place procedures that allow a dissatisfied beneficiary to challenge the default allocation. As the Beneficiaries point out, without such a rule nothing would prevent states from allocating 75%, 90% or even 100% of a settlement to medical expenses, thereby eviscerating the rule promulgated by *Ahlborn*. Because the District Court concluded otherwise, we will reverse its order in this respect and remand for further proceedings consistent with this opinion.

V

In *Ahlborn*, the Supreme Court assumed without deciding that liens on recoveries made by Medicaid beneficiaries for medical costs constitute an exception to the anti-lien and anti-recovery provisions of the Social Security Act. Medicaid beneficiaries in Pennsylvania have questioned this assumption by challenging the State's practice of utilizing such liens. Our examination of the text, structure, history and purpose of the Social Security Act leads us to conclude that liens limited to medical costs are not prohibited by the anti-lien and anti-recovery

38

provisions of the Act.  Accordingly, we uphold Pennsylvania's longstanding practice of imposing such liens.

The Beneficiaries have also challenged Pennsylvania's practice of disaggregating medical costs to comport with the requirements of *Ahlborn*.  We hold that Pennsylvania's current statutory framework, which affords Medicaid recipients a right of appeal from the default allocation, is a permissible default apportionment scheme.  The prior framework, which did not afford beneficiaries a right of appeal, is invalid under *Ahlborn*.

For the foregoing reasons, we will affirm in part, vacate in part, and remand the case for further proceedings consistent with this opinion.

*Tristani v. Richman*, Nos. 09-3537, 09-3538, Consolidated
POLLAK, *District Judge*, dissenting.

## I.

I agree with the majority that we possess jurisdiction over the defendants' appeal, and that we possess jurisdiction over the issues raised in the plaintiffs' cross-appeal to the extent those issues were included in the certified order of the District Court. However, like the District Court, I do not believe Congress intended to permit state Medicaid agencies, such as the Pennsylvania Department of Public Welfare ("DPW"), to impose liens on judgments and settlements obtained by Medicaid beneficiaries from third parties.[1] I therefore respectfully dissent.

---

[1] As the majority recognizes, the Supreme Court's decision in *Arkansas Department of Health and Human Services v. Ahlborn*, 547 U.S. 268, 280 n.9 (2006), assumed without deciding that "a State can . . . requir[e] an 'assignment' of part of, or plac[e] a lien on, the settlement that a Medicaid recipient procures on her own." After making this assumption, the Court cited to §§ 1396k(a)(1)(B)–(C) with a "cf." signal, noting in a parenthesis that under those provisions a Medicaid "recipient has a duty to identify liable third parties and to 'provid[e] information to *assist the State in pursuing*' those parties." *Id.* (emphasis and alteration in original). As will be discussed below, the language emphasized by the Court undercuts the majority's construction of the Social Security Act.

1

## II.

### A.

As a condition of participating in Medicaid, states must prepare a state Medicaid plan to comply with various requirements set out in the Social Security Act. *See generally* 42 U.S.C. § 1396a. As relevant here, a state Medicaid plan must permit the state to seek "reimbursement" when third parties are liable for medical services provided by Medicaid. Specifically, the plan must provide:

> (A)   that the State or local agency administering such plan will take all reasonable measures to ascertain the legal liability of third parties . . . to pay for care and services available under the plan, including
>
> > (i)   the collection of sufficient information . . . to **enable <u>the State</u> to pursue claims against such third parties**, . . .
> >
> > (ii)   the submission to the Secretary of a plan (subject to approval by the Secretary) **for pursuing claims against such third parties** . . . ;
>
> (B)   that in any case where such a legal liability is found to exist after medical assistance has been made available on behalf of the individual and where the amount of reimbursement the State can

reasonably expect to recover exceeds the costs of such recovery, the State or local agency will seek reimbursement for such assistance to the extent of such legal liability; . . . .

*Id.* §1396a(a)(25)(A)-(B) (emphasis added) ("reimbursement" provision).

A state's Medicaid plan must also require individuals enrolled in Medicaid to assign to the state their right to payment for medical care from third parties, and to cooperate with the state's efforts to recover those payments. In relevant part, this "assignment/cooperation" provision states that:

> (a)  For the purpose of assisting in the collection of medical support payments and other payments for medical care owed to recipients of medical assistance under the State plan approved under this subchapter, a State plan for medical assistance shall
>
>> (1)  provide that, as a condition of eligibility for medical assistance under the State plan to an individual who has the legal capacity to execute an assignment for himself, **the individual** is required
>>
>>> (A)  **to assign** the State any rights . . . to support

3

(specified as support for the purpose of medical care by a court or administrative order) and to payment for medical care from any third party;

(B) **to cooperate** with the State . . . in obtaining support and payments (described in subparagraph (A)) for himself . . . ; and

(C) **to cooperate** with the State in identifying, and providing information **to assist the State in pursuing**, any third party who may be liable to pay for care and services available under the plan . .

(b) Such part of any amount collected by the State under an assignment made under the provisions of this section shall be retained by the State as is necessary to reimburse it for medical assistance payments made on behalf of an individual with respect to whom such assignment was executed . . . and **the remainder of such amount collected shall be paid to such individual**.

4

*Id.* § 1396k(a)-(b) (emphasis added).[2]

In addition to the reimbursement and assignment/cooperation provisions, the Social Security Act contains an "anti-lien" provision, which states that:

> No lien may be imposed against the property of any individual prior to his death on account of medical assistance paid or to be paid on his behalf under the State plan, except

---

[2] Similarly, a state's Medicaid plan must ensure that the state has in place a legal framework by which the state acquires the right to payment from third parties for medical expenditures made by Medicaid. That is, the plan must provide:

> that to the extent that payment has been made under the State plan for medical assistance in any case where a third party has a legal liability to make payment for such assistance, the State has in effect laws under which, to the extent that payment has been made under the State plan for medical assistance for health care items or services furnished to an individual, the State is considered to have acquired the rights of such individual to payment by any other party for such health care items or services . . . .

*Id.* § 1396a(a)(25)(H).

5

(A)    pursuant to the judgment of a court on account of benefits incorrectly paid on behalf of such individual, or

(B)    in the case of the real property of an individual [when the individual is an inpatient in a medical institution, is required to spend her own income as a condition of receiving services in the institution, and is unlikely to ever be discharged from the institution and to return home].

*Id.* at § 1396p(a)(1). The Act also contains an "anti-recovery" provision, which states that "[n]o adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the State plan may be made, except [in limited circumstances not at issue in this case]." *Id.* at § 1396p(b)(1).

To comply with the foregoing provisions of the Social Security Act, Pennsylvania has enacted 62 Pa. Stat. Ann. § 1404(b), which provides that the "acceptance of medical assistance benefits shall operate as an assignment to the [DPW], by operation of law, of the assistance recipient's rights to recover . . . payment for medical care from any third party." Pennsylvania has also enacted 62 Pa. Stat. Ann. § 1409, which governs third party liability in the context of Medicaid. Under Section 1409, when Medicaid benefits are provided to a beneficiary because of an injury for which a third-party (including an insurer) is liable, both the DPW and the beneficiary may bring an independent cause of action

6

against the third-party. If the DPW institutes suit, it has "the right to recover from such person or insurer the reasonable value of benefits so provided." *Id.* § 1409(b)(1). If a beneficiary brings an action against a liable third party, the beneficiary may, if he so desires, "include as part of his claim the amount of [Medicaid] benefits that have been or will be provided" by the DPW. *Id.* § 1409(b)(5)(vi).

If the beneficiary institutes an action against such a third party, the beneficiary must notify the DPW of the suit within thirty days, *id.* § 1409(b)(5), and the DPW may intervene in the suit at any time before trial, *id.* § 1409(b)(5)(v). However, the DPW is not required to intervene in a beneficiary's suit, and may instead wait until the suit has proceeded to a judgment or settlement. In such cases, the resulting judgment or settlement must first be used to pay the reasonable litigation expenses and attorneys' fees incurred by the beneficiary. *Id.* § 1409.1(b)(1). Then, in cases that proceed to a judgment, "the court or agency shall allocate the judgment or award between the medical portion and other damages," and the DPW may assert a "lien against the medical portion of the judgment or award," in "the amount of the expenditures for the benefit of the beneficiary" made by the DPW. *Id.*[3] In cases that settle, and which therefore lack a judicial allocation of damages, the DPW may impose a lien upon the settlement to recover its medical

---

[3] As the majority notes, *see* Slip Op. at 15 n.8, Pennsylvania enacted the judicial allocation provision in § 1409.1 to comply with the Supreme Court's decision in *Ahlborn*, which held that a state Medicaid agency may not seek "payment for anything other than medical expenses." 547 U.S. at 281.

expenditures in an amount not exceeding "one-half of the beneficiary's recovery after deducting for attorney's fees, litigation costs, and medical expenses relating to the injury paid for by the beneficiary." *Id.* § 1409(b)(11).

B.

The majority concludes that the various provisions of the Social Security Act set forth in the preceding section should be construed to permit state Medicaid agencies, such as the DPW, to impose liens on future judgments and settlements obtained by Medicaid beneficiaries from third parties. The majority opinion derives much of its force from its argument that this construction prevents Medicaid recipients from obtaining windfall recoveries, because "[i]t defies common sense to conclude that Congress intended to protect the rights of Medicaid beneficiaries to recover medical costs that they never paid in the first place." Slip op. at 29.

I disagree with the majority opinion's construction of the Social Security Act for three primary reasons. First, the opinion ignores language in the reimbursement and assignment/cooperation provisions which indicates that Congress intended states to directly litigate claims against liable third parties. Second, the opinion erroneously concludes that because Congress intended to create a limited implicit exception to the anti-recovery provision, this court must read an even broader implied exception into the anti-recovery provision and an additional implied exception into the anti-lien provision. Third, the opinion fails to recognize that § 1409(b)(5)(vi), which allows a Medicaid beneficiary to "include as part of his claim [against a third party] the amount

8

of benefits that have been or will be provided" by the DPW, is preempted by the Social Security Act.

The last of these three reasons deserves particular emphasis: because § 1409(b)(5)(vi) is preempted by the plain language of the Social Security Act, Medicaid beneficiaries will not be able to obtain windfall recoveries. As a result, it is not necessary to devise textually tenuous implicit exceptions in order to read the Act in a way that prevents such recoveries.

1.

Turning to the first reason, the District Court held that the reimbursement and assignment/cooperation provisions, taken together, indicate that Congress did not intend to permit state Medicaid agencies to free-ride on the efforts of plaintiffs by asserting liens after a judgment or settlement has been obtained. Rather, Congress wanted states to either initiate suit against or intervene in actions against liable third parties, and wanted Medicaid recipients to cooperate in those efforts by providing state agencies with any information they might require. As the District Court explained:

> Section 1396a(a)(25)(A)(i)-(ii) requires a state plan for medical assistance to take all reasonable measures to provide for "the collection of sufficient information (as specified by the Secretary in regulations) to enable *the State to pursue claims against ... third parties*," and to further provide for "the submission to the Secretary of a plan (subject to approval by the Secretary) *for pursuing claims against such third parties*." This statutory language

9

unambiguously refers to direct actions by state entities against liable third parties. Section 1396a(a)(25)(B) requires a state to "seek reimbursement" from liable third parties for the cost of medical assistance provided to an individual "in any case where such a legal liability is found to exist after medical assistance has been made available on behalf of the individual and where the amount of reimbursement *the State can reasonably expect to recover exceeds the cost of such recovery*." The plain language of this statutory provision reveals that Congress believed that participating states would not only pursue liable third parties directly, but that they would also incur costs in seeking to recover their expenditures.

Under § 1396k(a)(1)(C), a state plan for medical assistance must provide that, as a condition of eligibility for medical assistance, an "individual is required . . . to cooperate with the State in identifying, and providing information *to assist the State in pursuing,* any third party who may be liable to pay for care and services available under the plan." This statutory language indicates that Congress expected participating states to need assistance in pursuing liable third parties. The reimbursement provision contained in § 1396k(b) likewise evinces a legislative intent that state entities directly pursue liable third parties. That provision requires a state entity which has collected money under an assignment

10

to retain only those proceeds necessary to reimburse it and the federal government for the cost of a given Medicaid recipient's medical care, and to pay the remainder of the money to the recipient. The reimbursement provision envisions an active role in litigation by state entities, not the passive role played by the DPW in the cases involving Tristani and Valenta.

*Tristani v. Richman*, 609 F. Supp. 2d 423, 469 (W.D. Pa. 2009) (emphasis in original) (citations omitted).[4]

---

[4] I recognize that the construction of the Social Security Act defended in this opinion would, by requiring the DPW to litigate claims itself, render it cost-prohibitive for the DPW to pursue certain claims. However, as the District Court noted, the reimbursement provision explicitly recognizes that there will be circumstances under which it will be too expensive for states to recover from third parties, and exempts states from any obligation to pursue claims in such circumstances. *See* 42 U.S.C. § 1396a(a)(25)(B) ("in any case where such a legal liability is found to exist after medical assistance has been made available on behalf of the individual and where the *amount of reimbursement the State can reasonably expect to recover exceeds the costs of such recovery*, the State or local agency will seek reimbursement for such assistance to the extent of such legal liability" (emphasis added)).

In addition, it should be noted that other public policy concerns aside from efficiency are at issue in this case, notably the attorney-client relationship. Pursuant to § 1409(b)(5)(vi), a plaintiff may pursue claims against third

11

parties for Medicaid expenditures made by the DPW. If her case settles, then the DPW is entitled to recover its medical expenditures in an amount of up to one-half of the beneficiary's recovery after deducting for attorney's fees and litigation expenses, regardless of how a court would have actually allocated the plaintiff's medical and non-medical damages. *Id.* § 1409(b)(11). As a result of this essentially arbitrary default rule, a plaintiff whose medical damages were relatively small in comparison to her non-medical damages is likely to be under-compensated by the settlement (which was made in light of the risks that always attend going to trial), while the DPW will be over-compensated (because the DPW does not have to factor such risks into its recovery). If the plaintiff wishes to challenge this default allocation, she must pursue a potentially expensive administrative appeal. *See* 55 Pa. Code § 259.2(d).

The plaintiff's attorney, however, is in a quite different position. Because the attorney's fees are deducted before the DPW takes its cut of the settlement, the attorney will always be fully compensated for her efforts. Thus, under Pennsylvania's statutory scheme, the plaintiff's attorney has an incentive to include the plaintiff's Medicaid damages in the complaint—which is likely to increase the amount of time the attorney will spend on the case and therefore her fees— even if that would not be advantageous for her client. While I am confident that most attorneys in Pennsylvania would (like plaintiffs' counsel in this action) do what is in the best interests of their clients regardless of what is in their own best interests, I nonetheless suspect that Congress did not intend to create such temptations.

The majority opinion rejects the District Court's conclusion that states may only seek reimbursement for care and services provided by Medicaid by bringing their own lawsuits against third parties or by intervening in suits brought by Medicaid recipients, suggesting that § 1396a(a)(25)(B) "is silent regarding the method by which reimbursement must be sought" by the state. Slip op. at 19–20. This statement is, in a strict sense, accurate: § 1396a(a)(25)(B) does not itself specify whether the state must seek reimbursement directly from third parties.

However, like the Supreme Court, "[w]e do not . . . construe statutory phrases in isolation; we read statutes as a whole." *United States v. Morton,* 467 U.S. 822, 828 (1984); *see also United Sav. Assn. of Tex. v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 371 (1988) ("A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme . . . ."). The majority opinion does not quote or otherwise address the immediately preceding subsection, which indicates that Congress wanted "*the State* to pursue claims against such third parties." 42 U.S.C. § 1396a(a)(25)(A) (emphasis added). The opinion also ignores § 1396k(a)(1)(C), which states that individuals must provide information "to assist the State in pursuing" liable third parties. And it does not address § 1396k(b), which envisions that the state will seek reimbursement for medical assistance payments directly from a liable third party, and will pay any "remainder" (i.e., amount recovered in excess of the state's medical expenditures) to the individual Medicaid recipient.[5] Thus, the

_____

[5] This last provision is particularly noteworthy: By providing for payment by the state Medicaid agency to the beneficiary of any remainder, § 1396k(b) indicates that

13

majority errs by ignoring language in the reimbursement and assignment/cooperation provisions indicating that Congress wants states to initiate or intervene in lawsuits against third parties.

2.

My second reason for disagreement with the majority opinion arises from its construction of the anti-lien and anti-recovery provisions. The District Court found that the anti-lien and anti-recovery provisions can be rendered consistent with Section 1396a(a)(25), the reimbursement provision, and Section 1396k, the assignment/cooperation provision, by construing the latter provisions "to require an assignment for the purpose of enabling a participating state to directly pursue claims against third parties liable for the costs of providing medical assistance to Medicaid recipients." *Tristani*, 609 F. Supp. 2d at 470. The majority opinion rejects this construction on the ground that "the District Court's conclusion that Pennsylvania must intervene in tort actions filed by Medicaid beneficiaries cannot be reconciled with the anti-recovery provision" because "[b]y its terms, the anti-recovery provision limits the ability of states to recover medical assistance payments made on behalf of Medicaid beneficiaries, regardless of the specific method." Slip op. at 20.

---

Congress was aware of the problem that a state's lawsuit against a liable third party might obtain an excessive recovery. It is striking, then, that Congress did not include a similar provision to address the situation of excessive recovery by Medicaid beneficiaries.

14

I agree with the majority that the anti-*recovery* provision would, if read in isolation, seem to prohibit the state from using any method from seeking to recover medical assistance payments expended on behalf of Medicaid recipients. From this, it follows that the reimbursement and assignment/cooperation provisions, which expressly state that states must pursue assigned claims directly against third parties, must constitute an implicit exception to the anti-recovery provision permitting states to recover from *liable third parties*.

However, it does not follow that the reimbursement and assignment/cooperation provisions create an exception to the anti-recovery provision permitting states to recover from *Medicaid beneficiaries*. Nor does it follow that the reimbursement and assignment/cooperation provisions must be read to impliedly repeal the anti-*lien* provision. *See* 42 U.S.C. § 1396p(a)(1) ("*No lien* may be imposed against the property of any individual . . . on account of medical assistance paid . . . under the State plan . . . ." (emphasis added)).[6] Our precedents recognize that "'[r]epeals by implication are not favored and will not be presumed unless the intention of the legislature to repeal is clear and

---

[6] I agree with the District Court that, under the reasoning of *Ahlborn*, the liens imposed by the DPW upon beneficiaries' recoveries of Medicaid expenditures from third parties are "imposed on their 'property' for purposes of the anti-lien provision." *Tristani*, 609 F. Supp. 2d at 472; *see also id.* ("[T]he mere fact that the DPW needed to assert liens in the first place indicates that the liens were imposed on the 'property' of [plaintiffs]."); *Ahlborn*, 547 U.S. at 286 ("Why, after all, would ADHS need a lien on its own property?").

15

manifest.'" *Hagan v. Rogers*, 570 F.3d 146, 154-55 (3d Cir. 2009) (quoting *National Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 662 (2007)).[7] Nowhere in the majority opinion's extended discussion of the various amendments to and the legislative history of the reimbursement and assignment/cooperation provisions does the majority point to any "clear and manifest" Congressional intent to create an implicit exception to the anti-lien provision or to permit recoveries directly from Medicaid beneficiaries.[8]

---

[7] The earliest versions of the anti-lien and anti-recovery provisions date to 1960, when they were first incorporated into the Social Security Act. Slip op. at 22. The earliest versions of the reimbursement and assignment/cooperation provisions were first enacted in 1967 and 1977, respectively. *Id.* at 26, 28. As the majority recognizes, the anti-lien and anti-recovery provisions have "undergone numerous amendments" clarifying and in some cases expanding the circumstances under which states may seek to recover from Medicaid beneficiaries. *Id.* at 24 n.12. Despite these many amendments, Congress has never added an express exception to the anti-lien provision permitting state Medicaid agencies to impose liens upon judgments and settlements obtained by beneficiaries against third parties.

[8] Indeed, the one piece of legislative history quoted by the majority—a statement by a single senator during a committee hearing—does not use the word "lien" or otherwise suggest that recoveries may be made directly from Medicaid beneficiaries. Slip op. at 27–28 (quoting *Social Security Amendments of 1967: Hearing Before the S. Comm. On Finance*, 90th Cong. 1572 (1967) (statement of Wallace M. Smith)). Far from evincing a clear intention to permit the

Such exceptions are not required by the language of the former provisions, which, as explained above, suggest on their face that Congress wanted states to directly initiate or intervene in lawsuits against third parties. As the District Court recognized, the anti-lien provision can best be reconciled with the reimbursement and the assignment/cooperation provisions by construing the latter according to their plain meaning.

In short, while a limited implied exception must be read into the anti-recovery provision to permit recoveries from liable third parties, that fact alone does not require—much less justify—reading an even broader implied exception into the anti-recovery provision or an additional implied exception into the anti-lien provision. Accordingly, I would affirm the District Court's holding that "[t]o the extent that sections 1409(b)(7)(i) and 1409.1(b)(1) permit the DPW to impose liens on the awards obtained by Medicaid recipients from liable third parties during the lifetimes of the recipients, they are preempted by § 1396p(a)(1) [the anti-lien provision]." *Tristani*, 609 F. Supp. at 473. In addition, to the extent that sections 1409(b)(7)(i) and 1409.1(b)(1) permit the DPW to seek recoveries of "medical assistance correctly paid" from Medicaid beneficiaries' settlements and

use of liens by states agencies, the statement by Senator Smith evinces only a more general intent to reduce "wasteful" double recoveries by beneficiaries—a goal accomplished by requiring states to initiate or intervene in suits against third parties. *Id.*

judgments, rather than directly from third parties, they are preempted by § 1396p(b)(1), the anti-recovery provision.[9]

3.

I would go a step further than the District Court, and also hold that § 1409(b)(5)(vi)—which permits a Medicaid beneficiary suing a third-party to "include as part of his claim the amount of [Medicaid] benefits that have been or will be provided" by the DPW—conflicts with the Social Security Act and is therefore preempted. As discussed above, the reimbursement and assignment/cooperation provisions indicate that Congress wanted state agencies to pursue claims

---

[9] The majority also notes that under traditional "common law principles, a partial assignment creates an equitable lien of favor of the assignee," *Angeles Real Estate Co. v. Kerxton*, 737 F.2d 416, 419 (4th Cir. 1984), and therefore concludes that "Congress understood that the legal effect of the [assignment/cooperation] provision would be to provide the states with a lien on recoveries of medical costs." Slip op. at 29–30. The difficulty with relying on such common law principles when interpreting the Social Security Act is that the anti-lien provision expressly prohibits the imposition of liens against Medicaid beneficiaries for the recovery of medical expenditures, except in circumstances not present in this case. *See Norfolk Southern Ry. Co. v. Sorrell*, 549 U.S. 158, 168 (2007) (noting, in the context of the Federal Employers' Liability Act ("FELA"), that "although common-law principles are not necessarily dispositive of questions arising under FELA, unless they are *expressly rejected* in the text of the statute, they are entitled to great weight in our analysis" (internal quotation omitted) (emphasis added)).

against third parties for reimbursement of Medicaid expenditures, and imposed upon individual Medicaid recipients only the obligation that they cooperate with state agencies by providing them with any information necessary to pursue their claims. *See* 42 U.S.C. § 1396a(a)(25)(A)(i) (requiring state plan to provide for "the collection of sufficient information . . . to enable *the State* to pursue claims against ... third parties" (emphasis added)); *id.* § 1396k(a)(1)(C) (requiring state plan to direct individuals to "cooperate with the State in identifying, and providing information *to assist the State in pursuing,* any third party who may be liable to pay for care and services available under the plan" (emphasis added)).

The natural reading of these provisions is that Congress wanted the states, and the states alone, to be able to pursue claims against third parties for reimbursement of Medicaid expenditures. Congress did not intend to authorize Medicaid recipients to include in their suits claims that properly belong to the states. Such a reading of the Social Security Act would, because of the anti-lien and anti-recovery provisions discussed above, permit Medicaid recipients to obtain a windfall recovery—which, as the majority recognizes, is an absurd result that Congress cannot have intended. Thus, I would hold that § 1409(b)(5)(vi) is also preempted by the third party liability provisions of the Social Security Act.

I come to this conclusion notwithstanding the fact that neither party to this litigation has argued that § 1409(b)(5)(vi) is preempted. The parties' positions are perhaps unsurprising, because both have self-interested reasons for seeking to rely upon this provision of Pennsylvania law: the plaintiffs hope to recover (or keep their recoveries of) Medicaid expenditures

19

from third parties, and then shield themselves from the DPW using the anti-lien and anti-recovery provisions, while the DPW hopes to free-ride on the efforts of plaintiffs and their counsel in order to avoid the expenses of actually litigating claims against third parties. The parties, of course, are entitled to their litigation positions, but the judiciary's duty is to "say what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803). Because § 1409(b)(5)(vi) permits Medicaid recipients to assert claims belonging to the DPW, and is therefore the underlying source of the difficulties in this case, I would reach the question of whether it is preempted, and would answer that question in the affirmative.

## III.

The construction of the Social Security Act defended in this dissent remains faithful to the plain language of the Act, while also eliminating the possibility that Medicaid recipients will be able to obtain windfall recoveries. For the reasons outlined above, I respectfully dissent.